J. S02015/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                               :          PENNSYLVANIA
                v.                           :
                                                 :
DARRYL JENKINS,                   :        No. 981 EDA 2018
                                               :
               Appellant           :

Appeal from the Judgment of Sentence, September 22, 2017,
in the Court of Common Pleas of Bucks County
Criminal Division at Nos. CP-09-CR-0004817-2017,
CP-09-CR-0005615-2016

BEFORE: GANTMAN, P.J.E., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED MAY 23, 2019**

Darryl Jenkins appeals from the September 22, 2017 judgment of sentence entered by the Court of Common Pleas of Bucks County following his conviction of unlawful contact with a minor; corruption of minors, indecent assault – person less than 16 years of age; and default in required appearance.[1] The trial court imposed an aggregate sentence of 11½ to 23 years' imprisonment. After careful review, we affirm.

The trial court set forth the following factual and procedural history:

> A.B. first had contact with [appellant] in 2002, when she was three years old. At that time, A.B.'s mother, [T.P.], became romantically involved with [appellant]. . . .

---

[1] 18 Pa.C.S.A. §§ 6318(a)(1), 6301(a)(1)(i)-(ii), 3126(a)(8), and 5124(a), respectively.

[Appellant] began to sexually assault A.B. when she was seven years old. Over the years, [appellant] routinely rubbed and touched her vagina, breasts and buttocks and digitally penetrated her vagina. [Appellant] also forcibly placed A.B.'s hand on his penis. [Appellant] told A.B., in vulgar and graphic terms, that he wanted to have sexual intercourse with her.

The sexual assaults occurred in multiple rooms in the residences where A.B lived and occurred when she was alone as well as when others were in the home. A.B. testified that [appellant] even groped her in the presence of other people describing how he put his hands on her buttocks while pretending to be engaging in a fatherly hug. The inappropriate touching was so frequent, A.B. perceived it as happening every day he was in the home.

A.B. did not initially report the abuse fearing her mother's and [appellant]'s reactions. However, when she was 14 years old, A.B. wrote a letter to her mother telling her that she was being sexually abused by [appellant], whom she referred to as "dad." A.B. handed the letter to her mother and went into her bedroom where, shortly thereafter, she was confronted by her tearful mother who wanted to know if A.B. was "sure this happened." A.B. told her mother she was sure. [T.P.] then, in the presence of A.B., asked [appellant] if anything had occurred. [Appellant] denied touching A.B., turned to A.B. and asked, "Am I a monster?" A.B. responded, "Yes. I'm scared of you." That same night, convinced by her mother's reaction and conduct that her mother did not believe her, A.B. told her mother that she "made up" what she had written in her letter. A.B.'s mother did not keep the letter and the subject was not discussed again until approximately two years later when A.B.'s younger sister, [appellant]'s daughter D.P. observed [appellant] sexually assaulting A.B. in the basement of their Morrisville home in 2016.[Footnote 4]

[Footnote 4] After Children and Youth began its investigation in this case, case

worker Lisa Gardner asked [T.P.] for the letter. [T.P.] later told Ms. Gardner that she could not find it.

On that occasion, A.B. was in the basement washing clothing. [Appellant] came into the basement, picked her up and put her down on a bin of clothes and then inserted his finger inside of her vagina. The assault was interrupted when D.P. appeared on the basement steps. When D.P. saw [appellant] and A.B. on the bin of clothes, she ran upstairs and told her mother what she had seen. [T.P.] reported that D.P. told her that she had seen her father's hands "on or near" A.B.'s "behind." [Appellant] quickly followed D.P. out of the basement. [T.P.] asked him what he had done to her daughter. He told her "nothing" had happened. [T.P.] then stated that D.P. had seen what he did. [Appellant] then told [T.P.] that A.B. had put his hand down her pants. No one spoke to A.B. about the incident and [appellant] continued to live in the home as if nothing had happened.

[Appellant] continued to have unrestricted access to A.B. until June 1, 2016. On that date, Officer Christopher Reardon of the Morrisville Borough Police Department was working as the school resource officer assigned to the Morrisville High School and noticed that A.B., a student he knew, appeared to be upset. When he asked her what was wrong, she told him that her stepfather had been sexually abusing her for the past several years.

Bucks County Children and Youth Social Services Agency was immediately contacted and case worker Lisa Gardner responded to the school that same date. When Ms. Gardner and Officer Reardon attempted to conduct a joint interview of A.B., A.B. indicated that she didn't want to talk about it anymore. Officer Reardon then left the room to allow Ms. Gardner to speak with A.B., hoping that A.B. would be more willing to confide intimate details to a woman. Ms. Gardner was then able to complete the interview. When the interview concluded, Ms. Gardner told Officer Reardon that A.B. reported

[appellant] began sexually abusing her when she was seven years old, that he digitally penetrated her vagina and touched her breasts and buttocks. A.B. also told Ms. Gardner that if she wanted something from [appellant], such as food, [appellant] would ask her, "What are you going to do for me?" and then forced A.B. to touch his penis.

Upon receiving this information, Officer Reardon went to A.B.'s home and spoke to [T.P.], confronting her with the information A.B. had provided to Ms. Gardner. [T.P.] initially denied having any knowledge of wrongdoing. When asked, she denied receiving the letter from [sic] A.B. had written to her regarding [appellant]'s sexual abuse. In response to continued questioning, [T.P.] remembered receiving the letter in 2015. Upon further questioning, [T.P.] also admitted that D.P. had told her about seeing something.

On that same date, [appellant] was interviewed at the Morrisville Borough Police Department. During the initial audio and video recorded interview, [appellant] denied any wrongdoing. He claimed that he was merely "playing" and "wrestling" and stated that A.B. initiated a lot of that physical contact. When asked if he was ever confronted about his behavior with A.B., he stated that on one prior occasion he had been told by [T.P.] that she was uncomfortable because he and A.B. were being "too friendly" and "too playful." [Appellant] stated that he then asked A.B. if she was "scared" of him and that she said she was not. He made no mention of A.B.'s letter. [Appellant] claimed that thereafter he stopped "playing" with A.B. He claimed however, that A.B. continued to "play" and "roughhouse" with him, bumping, pushing and grabbing him. When confronted about the incident in the basement that D.P. had interrupted, [appellant] claimed that A.B. had grabbed his arms and that he had to push her away. He stated that he picked her up, placing his hand on her thigh, and put her down on top of the laundry. He stated that D.P. "could have perceived" this as his having his hands between A.B.'s legs.

[Appellant] was placed in a holding cell pending criminal charges being filed. Later that evening, [appellant] indicated he wished to speak with the investigating officers and a second audio and video recorded interview was conducted. In this interview, [appellant] accused A.B. of dressing inappropriately in front of him beginning at an early age. He stated that on one occasion she only had on a shirt and underwear. He also described her as wearing "skin tight pants." He claimed that A.B. found him attractive, that she "teased" him, and that she touched his "private area." He stated that she wouldn't stop "playing" with him and that he touched her pelvic area by mistake. After additional questioning, [appellant] admitted that he intentionally rubbed A.B.'s vagina and breasts. He continued, however, to blame A.B. for the sexual encounters stating, "she always approached me" and "she came on to me." At the conclusion of the interview, [appellant] admitted that he had, in fact, digitally penetrated A.B.

. . . .

. . . . Jury selection [took place on March 29, 2017,] and the trial commenced that afternoon. A.B. was the second witness called that afternoon. Upon taking the witness stand, A.B. immediately denied that she had been sexually abused by [appellant]. She testified that the statements she made to Officer Reardon and Ms. Garner were untrue. This Court then took a recess to allow the Commonwealth to prepare to examine A.B. as a hostile witness and entered an order precluding the Commonwealth and the defense from speaking to A.B. since she was still in the process of testifying.

. . . .

The following morning, March 30, 2017, A.B. appeared for trial at 9:30 a.m. as required.[Footnote 7] [Appellant] did not appear. At 9:51 a.m., twenty-one minutes after trial was

scheduled to recommence, [appellant] sent a text message to his attorney stating, "To hospital. Don't feel very good at all. Going to sign myself in for mental health." At this Court's direction, counsel for [appellant] sent a text message to [appellant] at 10:15 a.m. asking for information regarding his condition, the name of the hospital and the name of the treating physician. [Appellant] did not respond to the text message. He did not respond to counsel's follow-up text message or counsel's five follow-up calls to his cellphone.[Footnote 8] Neither [appellant] nor anyone on his behalf provided any further information as to [appellant]'s whereabouts or his condition.

> [Footnote 7] Due to a conflict in schedule, Deputy Public Defender Nicholas J. Williamson, Esquire, replaced Mr. Hone.

> [Footnote 8] Defense counsel advised the Court that he had reliably communicated with [appellant] via cellphone over the prior two months and that the only phone number he had for [appellant] was his cellphone number.

Based on the fact that [appellant] did not communicate with his attorney in a timely fashion and that he did not provide any specific information as to his condition or location so as to allow this Court or counsel to determine if there was in fact good cause for his failure to appear, this Court issued a bench warrant for his arrest. Counsel for [appellant] and the Commonwealth were then directed to use any means available to advise [appellant] that a warrant had been issued and that he was to surrender himself to the nearest law enforcement agency. A recess was taken to allow counsel for [appellant] and the Commonwealth to continue to investigate [appellant]'s whereabouts.

That afternoon, a hearing was held to determine whether [appellant] should be tried *in abstentia*. The Commonwealth's evidence established that

[appellant] was present on the evening of March 29, 2017 when it was announced in open court that the trial would reconvene at 9:30 a.m. the following day. After [appellant] failed to appear on the morning of March 30, 2017, attempts by investigators to reach [appellant] and his family were unsuccessful. Calls to [appellant]'s cellphone went immediately to voicemail. None of the calls to family members were returned. All of the local hospitals in Trenton and Bucks County were contacted. Each hospital reported that [appellant] was not at their facility. [Appellant]'s current and former residences were checked with negative results. [Appellant]'s employer was contacted and reported that [appellant] had not reported for work. [Appellant]'s best friend was contacted and told police that he had not had any contact with [appellant] over the previous twenty-four hours and had no information as to his whereabouts. The county correctional facilities in Bucks County or Trenton reported that [appellant] was not in their custody.

Defense counsel introduced a portion of [appellant]'s statement to police prior to his arrest wherein he stated that he had suffered from severe panic attacks in the past. Defense counsel also introduced a text message he had received from [appellant] at 4:36 p.m. the previous evening, while the court was in recess.[Footnote 9] In that text message, [appellant] advised counsel that he was trying to find a Rite Aid pharmacy to get medication claiming that he was having "very bad chest pains" and "severe anxiety." Counsel responded, via text message, advising him not to leave the area. At 5:01 p.m., after court was recessed for the day, counsel sent a text message to [appellant] informing him that he was free to leave and that court would start at 9:30 a.m. the following day.

> [Footnote 9] At 3:44 p.m., after a fifteen minute recess, the jury was released for the day. Court was adjourned at 5:35 p.m.

Based on this information, this Court directed the Commonwealth to obtain an update from Capital Health Medical Center, the hospital used by [appellant] and where he had been treated for anxiety, to determine if [appellant] had appeared since the Commonwealth's initial inquiry earlier that morning. The Court also directed the Commonwealth to determine whether [appellant] had contacted Bucks County or Trenton police radio requesting emergency medical assistance. After yet another recess, the Commonwealth presented evidence that Capital Health Medical Center had confirmed that [appellant] was not at that facility and that neither Bucks County nor Trenton police radio had received a request for emergency assistance from [appellant] or from [appellant]'s Trenton residence.

Based on the evidence presented, this Court determined that [appellant] was voluntarily absent without cause and therefore ruled that the trial would continue in his absence. This Court also directed that the notes of testimony be transcribed as the trial proceeded so that the testimony taken in his absence would be available to him should he surrender himself or be apprehended prior to the conclusion of trial. Prior to taking any further testimony, the jurors were instructed that they were not to speculate as to why [appellant] was not present in the courtroom and that they were not to hold his absence against him.

Late in the afternoon of March 30, 2017, A.B. retook the stand and testified that [appellant] had in fact sexually abused her as she had previously reported to her mother, Officer Reardon and Ms. Gardner. She told the jury that she had not been truthful the day before because she, her sister D.P. and her mother were worried about what would happen to their family if [appellant] were to be convicted since he financially supported their family.

. . . .

[Appellant] remained a fugitive throughout the remainder of the trial. On April 3, 2017, he was

- 8 -

convicted of Unlawful Contact with a Minor, Corruption of Minors and Indecent Assault - person less than 16 years of age.[Footnote 10]

> [Footnote 10] [Appellant] was found not guilty of Aggravated Indecent Assault (person less than 13 years of age), 18 Pa.C.S.[A.] § 3125(a)(7), and Indecent Assault (person less than 13 years of age), 18 Pa.C.S.[A.] § 3126(a)(7), The jury did not reach a verdict on Aggravated Indecent Assault of a Child, 18 Pa.C.S.[A.] § 3125(b), and Aggravated Indecent Assault (person less than 16 years of age), 18 Pa.C.S.[A.] § 3125(a)(8). The Commonwealth chose not to retry [appellant] on the charges upon which the jury was deadlocked.

After the verdict, [appellant] was charged with Default in Required Appearance. The investigation into [appellant]'s whereabouts revealed that, after leaving the courthouse, [appellant] disconnected his cell phone service, thereby preventing law enforcement from locating him through his phone, and that he withdrew $15,000 from his Wells Fargo account between the evening hours of March 29, 2017, the night before his failure to appear for trial, and the afternoon of Sunday, April 2, 2017, the afternoon before the jury's verdict. [Appellant] made a personal withdraw [sic] at a bank in Trenton, New Jersey, on March 30, 2017, at 9:25 a.m., five minutes before he was to appear in Doylestown for trial and approximately twenty-five minutes before he sent a text message to his attorney informing him that he did not "feel very good at all" and was on his way to the hospital.

[Appellant] remained a fugitive until June 27, 2017, when he was arrested by the U.S. Marshalls in Trenton, New Jersey. . . .

. . . .

. . . . This Court imposed a sentence of three and one-half to seven years for Unlawful Contact with a Minor, graded as a felony of the third degree, three and one-half to seven years for Corruption of Minors, graded as a felony of the third degree, and one to two years for Indecent Assault - person less than 16 years of age, graded as a misdemeanor of the second degree. For the crime of Default in Required Appearance, graded as a felony of the third degree, this Court imposed a sentence of three and one-half to seven years. All of these sentences were ordered to be served consecutive to one another.

On October 2, 2017, [appellant] filed post-sentence motions. A hearing on those motions was held on October 19, 2017. . . .

On October 19, 2017, [appellant] was granted leave to file additional post-sentence motions. [Appellant] filed additional post-sentence motions on February 27, 2018. By Order dated February 28, 2018, this Court denied [appellant]'s requests for post-sentence relief.

Trial court opinion, 6/8/18 at 1-14 (citations to record omitted).

Appellant filed a notice of appeal to this court on March 23, 2018. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant timely complied. On June 8, 2018, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

I. Did the Trial Court commit an abuse of discretion when imposing a sentence, outside the standard and aggravated ranges, to the maximum sentence possible for each charge?

II. Did the Trial Court err when it stopped and prevented the direct testimony of the Commonwealth's witness [A.B.], and declared

that witness as hostile, without any motion or request by either the witness or the Commonwealth?

III. Did the Trial Court properly admit prior consistent statements of the witness [A.B.], where statements were admitted prior to [A.B.] testifying and where the repetitive and cumulative statements were prejudicial?

IV. Did the Trial Court err by allowing the trial to continue in the absence of [a]ppellant?

Appellant's brief at 8.

**I.**

In his first issue, appellant argues that the trial court abused its discretion when it imposed the statutory maximum sentence for each count of which appellant was convicted. Specifically, appellant contends that by imposing a statutory maximum sentence for each count and then running those sentences consecutively, the trial court "applied an unreasonable sentencing scheme." (Appellant's brief at 22.)

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. . . . [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but

- 11 -

requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

[**Commonwealth v. Walls**, 926 A.2d 957, 961 (Pa. 2007)].

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa.Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

[W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), **appeal denied**, [] 909 A.2d 303 ([Pa.] 2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the

> sentence imposed.  **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa.Super. 2003), **appeal denied**, [] 831 A.2d 599 ([Pa.] 2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa.Super. 2007).  A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. **Sierra**, **supra** at 912-913.
>
> As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors.  **Commonwealth v. Malovich**, 903 A.2d 1247, 1252 (Pa.Super. 2006).  An appellant must articulate the reasons the sentencing court's actions violated the sentencing code.  **Id.**

**Commonwealth v. Moury**, 992 A.2d 162, 169-170 (Pa.Super. 2010).

Here, we begin our analysis by determining whether appellant has complied with the procedural requirements of challenging his sentence.  First, appellant timely filed his notice of appeal pursuant to Pa.R.A.P. 902 and 903.  Second, he properly preserved the issue in post-sentence motions that were filed on October 2, 2017 and February 27, 2018.  The sentencing court denied appellant's motions on February 28, 2018.

Third, appellant included a Rule 2119(f) statement in his brief, in which he avers that the "trial court's imposition of sentence is far beyond the aggravated range of the sentencing guidelines and was prejudicial on its face in that the [trial court] obviously believed [a]ppellant should have been

convicted of more than he was." (**See** appellant's brief at 19.) Specifically, appellant notes that the minimum sentence imposed by the trial court was in excess of the maximum sentence in the aggravated range of the sentencing guidelines. (**Id.** at 21-22.) As the trial court noted on the record, the maximum term of incarceration in the aggravated range of the sentencing guidelines for unlawful contact with a minor is 18 months, indecent assault is 18 months, corruption of minors is 18 months, and default in required appearance is 6 months. (Notes of testimony, 9/22/17 at 66-67.) The trial court's minimum aggregate sentence of 11½ years is clearly in excess of the guidelines.[2] Finally, in light of appellant's Rule 2119(f) statement, we find that appellant has advanced a substantial question. **See** 42 Pa.C.S.A. § 9781(c)(3).

> In every case where the court imposes a sentence outside the sentencing guidelines . . . the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

**Commonwealth v. Leatherby**, 116 A.3d 73, 83 (Pa.Super. 2015), quoting

**Commonwealth v. Rodda**, 723 A.2d 212, 215 (Pa.Super. 1999), citing

42 Pa.C.S.A. § 9721(b). A trial court satisfies this requirement "when the

---

[2] The trial court's sentence breaks down as follows: 3½ to 7 years' imprisonment for unlawful contact with a minor; 3½ to 7 years' imprisonment for corruption of a minor; 1 to 2 years' imprisonment for indecent assault; and 3½ to 7 years' imprisonment for default in required appearance, all of which were to run consecutively. (**Id.** at 78-79.)

judge states [her] reasons for the sentence on the record and in the defendant's presence." ***Commonwealth v. Antidormi***, 84 A.3d 736, 760 (Pa.Super. 2014), ***appeal denied***, 95 A.3d 275 (Pa. 2014), quoting ***Commonwealth v. Widmer***, 667 A.2d 215, 223 (Pa.Super. 1995), ***rev. on other grounds***, 689 A.2d 211 (Pa. 1997).

When sentencing appellant, the trial court made the following notation for the record:

> I agree with [the Commonwealth's] characterization of those factors. I think -- I think [the Commonwealth] accurately and succinctly stated where the sentencing guidelines do not apply based on the facts and circumstances of this case. But the message I hope the community gets out of these proceedings is that when children are victimized, when children are hurt, that they will receive justice if they report.
>
> Sometimes I say I am amazed that any child ever reports sexual abuse ever when they face being called a liar and when they face being called a horrid [sic] and face being attacked and losing their family and losing their mom and losing their home. I am surprised anyone ever comes forward when we can't even guarantee that we keep custody of those who have been convicted of abusing them. That if they come forward, if they have the bravery to come forward, that they will receive justice, that there will be a time in their life where they get to sleep at night without worrying about a perpetrator, a predator, that they can know that they will be protected to the best of this court's ability.
>
> One of the things that [appellant] is not aware of, because he wasn't here, was the extreme steps the court and [the Commonwealth] took to make sure [A.B.] had a place to live and stay. And immediately following the verdict when [appellant was] on the

loose and [A.B.'s] mother was clearly conspiring with [appellant] to interfere in the prosecution and to interfere in [appellant's] apprehension, that [A.B.] had somewhere safe to go.

So after all this, at the end of the day after this jury came back and you told us the truth -- and we appreciate it. Thank you. You told us the truth -- that she didn't get to go home to her own bed. She had to go to some strange people, with strange people and some -- laying down in some strange bed, and that's what you did to her.

Based on all of those circumstances, based on the factors as set forth by [the Commonwealth], with regard to the sentencing guidelines, based on the course of conduct, based on the complete devastation of a young life both while the crimes were being committed, while the case was being prosecuted, and then after the conviction was finally won, I find that the sentencing guidelines are not in any way reflective of the facts and circumstances of this case and I am going to exceed the sentencing guidelines.

Notes of testimony, 9/22/17 at 75-77.

Here, the record reflects that the trial court provided the reasons for its deviation from the sentencing guidelines and did so on the record and in appellant's presence. Accordingly, we find that the trial court did not abuse its discretion when it sentenced appellant in excess of the maximum sentence of the aggravated range of the sentencing guidelines.

**II.**

Appellant next contends that the trial court erred when it "stopped and prevented the direct testimony of [A.B.] and declared that witness as hostile, without any motion or request by either the witness or the Commonwealth."

(Appellant's brief at 28.) Specifically, appellant avers that the trial court exceeded its authority under Pennsylvania Rule of Evidence 611(a), which directs a court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence as to make those procedures effective for determining the truth[.]" (*Id.* at 31; Pa.R.E. 611(a)(1).) The Commonwealth argues that appellant failed to preserve the issue at trial, thereby waiving the issue on appeal. (Commonwealth's brief at 26-27.)

It is well settled in this Commonwealth that a party must raise a timely objection to an evidentiary ruling by the trial court in order to preserve the issue for appellate review. ***Commonwealth v. Wanner***, 158 A.3d 714, 717 (Pa.Super. 2017), citing Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

The record reflects that appellant did not raise any objection to the trial court's ruling declaring A.B. to be a hostile witness. (***See*** notes of testimony, 3/29/17 at 58-72; 3/30/17 at 78-144.) Accordingly, appellant's second issue is waived on appeal.

## III.

In his third issue, appellant argues that the trial court "improperly admitted prior consistent statements of [A.B.], where statements were admitted prior to [A.B.'s] testifying and where the repetitive and cumulative statements were prejudicial." (Appellant's brief at 36.) In his brief, appellant specifically avers that the trial court's admission of testimony from both

Officer Christopher Reardon ("Officer Reardon") of the Morrisville Borough Police Department[3] and Lisa Gardner, a caseworker with the Bucks County Children and Youth Social Services Agency ("Children and Youth") was in error because their testimony was cumulative and prejudicial. (*Id.* at 41.) Additionally, appellant avers that a portion of Officer Reardon's testimony violated the rule against hearsay. (*Id.* at 38.)

The Commonwealth raises a partial waiver argument. Specifically, the Commonwealth contends that appellant's claims regarding Ms. Gardner's testimony and the inappropriate admission of hearsay evidence via Officer Reardon's testimony are waived on appeal because appellant failed to include these issues in his Rule 1925(b) statement. (Commonwealth's brief at 31.) Based on our review of appellant's Rule 1925(b) statement, we agree.

The Pennsylvania Rules of Appellate Procedure require appellants to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). Issues that are not included in an appellant's Rule 1925(b) statement are waived on appeal. Pa.R.A.P. 1925(b)(4)(vii).

Here, appellant's Rule 1925(b) statement reads, in relevant part: "Whether the trial court properly admitted prior consistent statements of witness [A.B.], where the statements were admitted prior to [A.B.] testifying

---

[3] Officer Reardon was assigned to Morrisville High School as the school's resource officer. (Notes of testimony, 3/29/17 at 26-27.)

and where the repetitive and cumulative statements were prejudicial?" (Appellant's Rule 1925(b) statement at 1.)

This issue did not specifically challenge Ms. Gardner's testimony, which occurred after A.B.'s testimony, or Officer Reardon's alleged hearsay testimony. Accordingly, appellant waives these challenges on appeal.

Appellate review of a trial court's admission of evidence is governed by the following standard:

> Our standard of review regarding the admissibility of evidence is an abuse of discretion. "[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion." ***Commonwealth v. Weiss***, [] 776 A.2d 958, 967 ([Pa.] 2001) (citations omitted). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." ***Commonwealth v. Hoover***, 16 A.3d 1148, 1150 (Pa.Super. 2011).

***Commonwealth v. Cox***, 115 A.3d 333, 336 (Pa.Super. 2015) (***en banc***), ***appeal denied***, 124 A.3d 308 (Pa. 2015), quoting ***Commonwealth v. Collins***, 70 A.3d 1245, 1251-1252 (Pa.Super. 2013), ***appeal denied***, 80 A.3d 774 (Pa. 2013).

In its Rule 1925(a) opinion, the trial court states that it admitted Officer Reardon's initial testimony regarding Ms. Gardner's summary of the interview she conducted with A.B. and provided to Officer Reardon, which served as the basis of Officer Reardon's decision to interview A.B.'s mother and to bring appellant in for questioning. (Trial court opinion, 6/8/18 at 17.)

As noted by the trial court, our supreme court has held that such statements are properly admitted in order to explain a police officer's subsequent course of conduct. *Commonwealth v. Weiss*, 81 A.3d 767, 805 (Pa. 2013), citing *Commonwealth v. Chmiel*, 889 A.2d 501, 532 (Pa. 2005) ("[i]t is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which the police acted."). Accordingly, we find that the trial court did not abuse its discretion when it admitted Officer Reardon's testimony.

Appellant further argues that the trial court erred because it unilaterally expanded the scope of Officer Reardon's testimony and, by so doing, admitted cumulative evidence. (Appellant's brief at 39.) Specifically, appellant takes exception to the trial court's instruction to the jury that, following A.B.'s testimony, Officer Reardon's testimony could be used by the jury to determine A.B.'s credibility.[4] (*Id.*, citing notes of testimony, 3/31/17 at 16.) Appellant failed to preserve this issue for appellant review in the trial court, therefore, waiving this argument on appeal.

The Pennsylvania Rules of Appellate Procedure prohibit an appellant from raising an issue for the first time on appeal. Pa.R.A.P. 302(a). Failure

---

[4] Previously, the trial court instructed the jury that Officer Reardon's testimony could only be considered to explain his course of conduct during the investigation. (Notes of testimony, 3/29/17 at 38.)

to preserve an issue before the trial court results in waiver of the issue on appeal. *Id.* Indeed, our supreme court has held:

> [I]t is axiomatic that issues are preserved when objections are made timely to the error or offense. *See Commonwealth v. May*, [], 887 A.2d 750, 761 ([Pa.] 2005) (holding that an "absence of contemporaneous objections renders" an appellant's claims waived); and *Commonwealth v. Bruce*, [], 916 A.2d 657, 671 ([Pa.Super.] 2007), *appeal denied*, [], 932 A.2d 74 ([Pa.] 2007) (holding that a "failure to offer a timely and specific objection results in waiver of" the claim). Therefore, we shall consider any issue waived where Appellant failed to assert a timely objection.

*Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008), *cert. denied sub nom. Baumhammers v. Pennsylvania*, 558 U.S. 821 (2009).

The record reflects that outside of the presence of the jury, the trial court notified the parties of its intention to alter its instructions to the jury in regards to Officer Reardon's testimony:

> THE COURT: Yes. All right.
>
> The other thing I wanted to say is that I need to instruct -- I need to instruct the jury that when -- that the prior out-of-court statements that Officer Reardon testified to, at the time that he testified to her prior statements, I indicated that they could only consider that at that stage of the proceedings for purposes of why the officer did what he did.
>
> [Appellant's counsel]: Correct.
>
> THE COURT: Everybody remembers that.
>
> [Appellant's counsel]: Yes
>
> [The Commonwealth]: Yes, Your Honor.

- 21 -

> THE COURT: Now they may consider it for purposes of determining her credibility for prior consistent statements.
>
> [The Commonwealth]: Thank you, Judge.
>
> THE COURT: Okay.

Notes of testimony, 3/31/17 at 13-14. The record reflects that appellant failed to raise a contemporaneous objection to the trial court's supplemental jury instruction. Accordingly, this particular argument is waived on appeal.

**IV.**

Appellant finally contends that the trial court erred when it conducted his trial *in absentia* because at the time the trial court made its ruling, "all that was known for certain was that [a]ppellant had twice communicated with his attorney that he was in some sort of distress and that [a]ppellant was seeking help." (Appellant's brief at 47.)

The Pennsylvania Rules of Criminal Procedure require a criminal defendant to be present at every stage of the trial. Pa.R.Crim.P. 602(A). However, "[t]he defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial, including the return of the verdict and the imposition of sentence." *Id.* In those cases, the Commonwealth has the burden to prove, by a preponderance of the evidence, that the defendant's absence is without cause and that the defendant knowingly and intelligently waived his right to be present for his

trial. ***Commonwealth v. Hill***, 737, A.2d 255, 259 (Pa.Super. 1999). Our supreme court has held, however, that a review of the sufficiency of the Commonwealth's evidence is not necessary if the record, taken as a whole, establishes that the defendant had notice of trial and nonetheless "willfully decided to absent himself without cause or justification." ***Commonwealth v. Sullens***, 619 A.2d 1349, 1352-1353 (Pa. 1992). Indeed, in ***Sullens***, the defendant admitted during sentencing that he knew of his trial date and knowingly absconded. ***Id.*** at 1353.

Here, appellant admitted to knowingly absenting himself from trial when he pled guilty to one count of default in required appearance. The record reflects the following admission:

> THE COURT: Do you admit that those facts are correct; that you, in fact, left the trial that was referred to, that you continually left that trial, that you intentionally fled to avoid prosecution and conviction and sentencing?
>
> [Appellant]: Yes.

Notes of testimony, 9/22/17 at 21.

Due to appellant's admission on the record that he intentionally absented himself from trial in order to avoid prosecution, conviction, and sentencing, we find that the trial court did not err when it conducted appellant's trial ***in absentia***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/23/19</u>