J. E04004/14

2015 PA Super 103

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
MYRON COX, : No. 1831 WDA 2012
:
Appellant :


Appeal from the Judgment of Sentence, October 1, 2012,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0016050-2011


BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA,
DONOHUE, SHOGAN, MUNDY, OLSON, AND OTT, JJ.


OPINION BY FORD ELLIOTT, P.J.E.: **FILED APRIL 29, 2015**

Myron Cox appeals from the judgment of sentence of October 1, 2012,

following his conviction of criminal attempt (homicide), aggravated assault,

recklessly endangering, and other charges. We vacate and remand for

re-trial.

> The testimony in this case is summarized as
> follows. Taza Clardy testified that on August 31,
> 2011, he was walking on the North Side of Pittsburgh
> toward a friend's residence. Since his friend was not
> yet home, Clardy walked in the direction of
> Ashley Cochran[]'s residence, another acquaintance
> in the area. He saw Cochran[] speak with one of a
> number of individuals in front of her home, and then
> go inside. As Clardy waited on the street for his
> friend to arrive, he observed Appellant with another
> male and two females. Appellant was wearing black
> jeans and a black hoodie. Clardy recognized
> Appellant from seeing him in the neighborhood.
> Appellant was standing next to a black BMW or

Mercedes. Clardy spoke with the two men briefly, discussing a CD that was playing.

After waiting approximately fifteen to twenty minutes, Clardy decided to walk to the Circle K convenience store. As he was walking up the street, texting on his phone, he heard one pop, then another. Clardy turned around and saw a person wearing a black hoodie and black jeans pointing a firearm at him. Clardy asked what the man was doing. The question was answered by Clardy seeing the flash of gunfire. Clardy ran and heard five or six more shots, one of which struck him in the leg. He told the paramedics that he did not know who had shot him because he was shot from behind. Clardy has a scar and residual pain in his leg as a result of the incident. He identified Appellant out of a photo array as a person in the area when he was shot.

Ashley Cochran testified that she heard seven or eight gunshots that night from the living room in her house. When she heard the first shot, she grabbed her two year old son, who was sitting on her lap, and opened the door. She looked left, where she heard the gunfire, and saw Appellant come around the corner, put both hands in his pocket while staring at her, and get into the passenger side of a BMW. Appellant was dressed in a dark hoodie with the hood up and dark jeans. Ashley identified the driver as Jerome Cox, and testified that Jerome quickly turned the car around and drove away at a speed in excess of the posted limit.

Cochran also testified that she was involved in an incident earlier that month involving Appellant. Cochran observed a fight in front of her house involving a group of friends, Appellant and his brother Jerome. Jerome unsuccessfully attempted to collect a $5 debt from a game of Spades from a week before. The argument turned physical when Appellant punched Cochran's friend from behind.

Alexandra Poss, a neighbor, testified that she also heard gunshots. Poss and her roommate,

Cayla Zahoran, got down on the floor because the shots sounded close. When she went upstairs, she observed bullet holes in her bedroom window. Zahoran's account of the incident mirrored that of her roommate.

Forensic evidence established that the ten shell casings found at the scene were fired from the same weapon.

In contrast, Britney Brown testified that she was with Appellant at her cousin's house for a cookout the entire day and night of August 31, 2011. Brown testified that the cookout was not scheduled because of any special occasion, yet a substantial amount of food was prepared for the Wednesday night affair. She and Appellant stayed overnight because they had been drinking and did not have a ride back. Brown testified that it seemed out of Appellant's character to commit such an offense, but also testified to being unaware of Appellant's numerous arrests, including several convictions for Possession with Intent to Deliver a Controlled Substance.

Trial court opinion, 3/27/13 at 3-5 (citations to the record omitted).

Appellant has raised the following issues for this court's review:

I. Was due process and the right to a fair trial violated where the court permitted the Commonwealth to introduce prior bad acts with no notice given until the morning of trial, where such acts were not proper 404(B) evidence and where the evidence was overly prejudicial?

II. Was the evidence insufficient to sustain the conviction, and therefore an enhanced sentence, for attempted homicide with serious bodily injury where, there was no evidence of risk of death, serious impairment, protracted loss, or permanent disfigurement; and should not the sentence therefore be set at a

maximum of 10-20 years instead of 20-40 years?

III. Did the court err in determining the defense counsel open[e]d the door to character evidence, and therefore appellant's prior criminal history when a question was asked of a witness regarding their personal opinion of [appellant]?

IV. Did the court err in failing to award a new trial based on after-discovered evidence and did this error result in [appellant] being denied due process and a fair trial?

V. Was the sentence imposed manifestly excessive, unreasonable, and an abuse of discretion where a statutory maximum sentence of total confinement was imposed without consideration of [appellant]'s rehabilitative needs, or his nature and characteristics, and where the court focused on the seriousness of the offense to the exclusion of other factors and does such a sentence violate the norms underlying the Sentencing Code?

Appellant's brief at 6.

In his first issue on appeal, appellant argues that the trial court should not have admitted evidence regarding the fight prior to the shooting. Appellant argues that the Commonwealth failed to give proper notice of its intention to offer this evidence, and the evidence was irrelevant and prejudicial. The Commonwealth responds that it did not become aware of the fight involving appellant until just before trial, and immediately gave notice to appellant. The Commonwealth contends that the evidence goes to motive.

> Our standard of review regarding the admissibility of evidence is an abuse of discretion. "[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion." ***Commonwealth v. Weiss***, 565 Pa. 504, 776 A.2d 958, 967 (2001) (citations omitted). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." ***Commonwealth v. Hoover***, 16 A.3d 1148, 1150 (Pa.Super.2011).

***Commonwealth v. Collins***, 70 A.3d 1245, 1251-1252 (Pa.Super. 2013),

***appeal denied***, 80 A.3d 774 (Pa. 2013).

Pennsylvania Rule of Evidence 404 provides, in relevant part:

**(b)   Crimes, Wrongs or Other Acts.**

*(1)   Prohibited Uses*.   Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2)   Permitted Uses*.   This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

*(3)   Notice in a Criminal Case*.   In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the

> general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E., Rule 404(b), 42 Pa.C.S.A.

Our Supreme Court has explained:

> Evidence of a defendant's prior criminal activity is inadmissible to demonstrate his bad character or criminal propensity. The same evidence may be admissible for various legitimate purposes, however, provided that its probative value outweighs the prejudicial effect likely to result from its admission, . . . and an appropriate limiting instruction is given. One such evidentiary purpose is . . . to demonstrate the defendant's motive for committing the crime charged.

***Collins***, 70 A.3d at 1252, quoting ***Commonwealth v. Paddy***, 800 A.2d 294, 307 (Pa. 2002) (citations omitted). "To be admissible under this exception, there must be a specific 'logical connection' between the other act and the crime at issue which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." ***Commonwealth v. Ross***, 57 A.3d 85, 100 (Pa.Super. 2012) (***en banc***), ***appeal denied***, 72 A.3d 603 (Pa. 2013) (quotation marks and citations omitted).

> It has been succinctly stated that (t)he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to

> believe the accused guilty, and thus effectually to
> strip him of the presumption of innocence.

*Commonwealth v. Kinard*, 95 A.3d 279, 284 (Pa.Super. 2014) (*en banc*), quoting *Commonwealth v. Spruill*, 391 A.2d 1048, 1049 (Pa. 1978).

The evidence regarding the fight between appellant, his brother, and Cochran's friends was not relevant to show motive in this case. The victim, Clardy, was not present during the card game or the subsequent fight over the $5 debt which occurred earlier in the month from this incident. The Commonwealth's theory was that appellant shot Clardy because he was still angry about the $5 debt. However, it was actually appellant's brother, Jerome, who was owed the $5. Even if appellant got into a fight with one of Cochran's friends, this would not establish a motive to shoot Clardy. The fight preceding the shooting is simply not relevant. The Commonwealth has failed to demonstrate any logical connection between the two, other than the fact that some of Cochran's friends were involved in the fight, and Clardy also happens to be a friend of Cochran's. This is a tenuous connection at best. *Cf. Collins*, *supra* (evidence the defendants were involved in the drug trade was admissible to show motive for killing member of rival drug distribution organization).

In fact, Clardy testified that he had seen appellant around the neighborhood, including at Cochran's house. (Notes of testimony, 4/11-13/12 at 54-55.) Appellant lived across the street from Cochran. (*Id.* at 64.) Clardy testified that he had never had any problems with appellant

in the past. (*Id.*) Immediately prior to the shooting, Clardy was having a conversation with appellant and Jerome about a hip-hop album. (*Id.* at 59.) Clardy testified their interaction was normal and he did not feel he was in any danger. (*Id.* at 87-89.) Similarly, Cochran testified that Clardy had nothing to do with the card game dispute, and that prior to that incident, she had a good relationship with the Cox family, including appellant. (*Id.* at 122-123, 127.) Cochran and appellant used to sit on her porch late at night and play cards. (*Id.* at 127.)

Any probative value the incident has is outweighed by its prejudicial effect, particularly in this case, where the evidence is circumstantial. Neither Clardy nor Cochran could identify appellant as the shooter, only that he was in the area and was wearing similar clothing. Therefore, it cannot be said that admission of this evidence was harmless error in the face of overwhelming evidence of guilt.

The trial court opines that, in the alternative, the fight was part of the history of the case and was admissible as *res gestae*. (Trial court opinion, 3/27/13 at 7 n.2.) *See Commonwealth v. Burton*, 770 A.2d 771, 778 (Pa.Super. 2001), *appeal denied*, 868 A.2d 1197 (Pa. 2005), *overruled on other grounds by Commonwealth v. Mouzon*, 812 A.2d 617 (Pa. 2002) (evidence of other crimes, wrongs, or bad acts is admissible where they were part of a chain or sequence of events which formed the history of the case and were part of its natural development, also known as the

"complete story" rationale) (citations omitted). However, the Commonwealth sought to admit the evidence on the basis that it was relevant to prove motive, not as *res gestae*. The fight occurred approximately one month prior to the shooting and Clardy was not even involved. Furthermore, as stated above, whatever tenuous connection can be shown between the previous fight and the subsequent shooting would be outweighed by its prejudicial impact. Apparently, the only basis for admitting the evidence was to show that appellant is a violent individual, which is, of course, impermissible. The Commonwealth attempted to portray appellant as unreasonable and impulsive, precisely the sort of individual who would fly off the handle and shoot someone over a $5 gambling debt. (Notes of testimony, 4/11-13/12 at 301-302.) However, it is well settled that other bad acts evidence is inadmissible to prove a defendant's propensity to commit the crime charged. *Kinard*, 95 A.3d at 284, citing **Commonwealth v. Brookins**, 10 A.3d 1251, 1256 (Pa.Super. 2010), *appeal denied*, 22 A.3d 1033 (Pa. 2011).

We determine it was an abuse of discretion to allow the Commonwealth to present this evidence regarding the fight between appellant and Cochran's friends as proof of motive to shoot the victim, Clardy. As we find appellant's first issue to be dispositive, we need not address his remaining claims, including lack of adequate notice.

J. E04004/14

Judgment of sentence vacated. Remanded for re-trial. Jurisdiction relinquished.

Bender, P.J.E., Panella, Donohue, and Ott, JJ. join the Opinion.

Shogan, J. files a Dissenting Opinion which is joined by Gantman, P.J., Mundy, and Olson, JJ.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2015

- 10 -