J-S55001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES ROBERT HILL | : | |
| | : | |
| Appellant | : | No. 192 WDA 2018 |

Appeal from the Judgment of Sentence August 18, 2014
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0009750-2013

BEFORE: MURRAY, J., McLAUGHLIN, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.: **FILED OCTOBER 31, 2019**

James Robert Hill (Appellant) appeals from the judgment of sentence entered after a jury found him guilty of attempt to commit homicide[1] and related offenses. Appellant claims that the trial court erred in admitting evidence of his prior unrelated criminal sentence, denying his motion to suppress a statement he gave police, and allowing certain cross-examination of him by the Commonwealth. Appellant also asserts that the evidence was insufficient to establish attempt to commit homicide; that two of his sentences should have merged; and his aggregate sentence was excessive. Upon review, we affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901(a), 2501(a).

The trial court summarized the evidence presented at trial as follows:

On April 11, 2013, at approximately 1:30 a.m., [City of Pittsburgh police officers] observed a Chevrolet Malibu traveling at a high rate of speed [in the Homewood neighborhood] of Pittsburgh. After observing the vehicle fail to stop at a posted stop sign, officers attempted to initiate a traffic stop on the vehicle, at which time the vehicle fled at a high rate of speed before ultimately crashing into a wall[.]

As officers approached the vehicle with weapons drawn, they gave verbal commands to the operator, later identified as Appellant . . . to show his hands. As Officer Morgan Jenkins approached [Appellant's] vehicle, [Appellant] exited the vehicle and . . . shove[d and pinned Officer Jenkins to the door] before attempting to reenter his vehicle. . . . Other officers then intervened and attempted to extricate [Appellant] from his vehicle, at which time [Appellant] became combative, punching and shoving the officers. Officers attempted to employ a Taser to subdue [Appellant, but] were unsuccessful, and [Appellant] was able to escape. During the initial struggle with [Appellant], Officer Michelle Auge sustained multiple injuries, including two . . . fractured fingers and an orbital bone fracture.

[Appellant] fled the scene on foot with officers giving chase. Officer Jenkins and Officer Auge eventually located [Appellant] on a wooded hillside near Chaucer Street. Officer Jenkins gave chase down the hillside while Officer Auge remained at the top of the hill. Moments later, Officer Auge heard gunshots and observed muzzle flashes coming from [Appellant's] position. Officer Auge then heard Officer Jenkins shout, "I'm hit!" Officer Auge then fired three . . . rounds at [Appellant] from her position atop the hillside.

When assisting officers arrived, they found Officer Jenkins and [Appellant] at the base of the wooded hillside. . . . Officers also discovered a 9mm semiautomatic handgun lying on the ground next to [Appellant].

Trial Court Opinion, 5/17/19, at 2-3.[2]

Officer Jenkins sustained two gunshots, a "graze" to his left tricep and a shot to his left armpit. As a result of the latter, Officer Jenkins suffered a permanent spinal cord injury and became paraplegic. N.T. Trial, 8/12/14, at 99, 109-110, 144, 149.[3] Appellant was shot "five or six times" and was transported to the hospital where, following surgery, he gave a recorded statement to police. *Id.* at 438-439 (testimony of Appellant).

Appellant was charged with one count each of attempt to commit homicide, aggravated assault-serious bodily injury, aggravated assault-bodily injury to a police officer (aggravated assault-police), assault of a law enforcement officer, resisting arrest, persons not to possess firearms, firearms not to be carried without a license, duties at stop signs, and fleeing or attempting to elude officer.[4]

Appellant filed a pre-trial motion to suppress the statement he made to police at the hospital, averring that his waiver of *Miranda*[5] rights was not

---

[2] Appellant adopts this same recitation of facts. *See* Appellant's Brief at 11-13.

[3] The notes of testimony of the suppression hearing, four-day jury trial, and guilty plea and sentencing hearing, are included in one transcript, dated August 12 through 18, 2014. For ease of discussion, we cite the transcript with the first date.

[4] 18 Pa.C.S.A. §§ 2702(a)(1), (3), 2702.1(a), 5104, 6105(a)(1), 6106(a)(1); 75 Pa.C.S.A. §§ 3323(b), 3733(a).

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

knowing, voluntary or intelligent because of the effects of his post-surgery pain medication. Also prior to trial, the Commonwealth sought to present evidence that approximately one year earlier, while Appellant was serving part of a 3 to 6 year sentence at a halfway house, he unlawfully left that facility, and an arrest warrant was issued for his escape. The Commonwealth averred that this evidence was relevant to show Appellant's motive to flee and elude police on the night of the shooting.

The trial court heard both parties' motions on August 12, 2014. The court permitted evidence of Appellant's prior bad act, including, over Appellant's objection, the length of the prior sentence (3 to 6 years). The court also denied Appellant's suppression motion, allowing the Commonwealth to introduce the statement he gave to police at the hospital. Ultimately at trial, however, the Commonwealth did not present evidence of Appellant's statement.

Following the suppression hearing, the case proceeded immediately to the jury trial; the charge of persons not to possess firearms was severed to be heard by the trial court. The Commonwealth called 14 witnesses, including Officers Jenkins and Auge, experts in the field of firearms and neurosurgery, and the supervisor at the halfway house from which Appellant escaped. The Commonwealth played a "dash cam video" taken from Officers Jenkins and Auge's patrol car, which showed their pursuit of Appellant's car, Appellant driving through one stop sign, and Appellant assaulting both officers when he

exited his car. *See* N.T. Trial, 8/12/14, at 81-82, 85. Dr. Robert Levine, an expert in firearms and tool marks, opined that two cartridge casings recovered from the scene were discharged from the 9 mm semiautomatic handgun found near Appellant. *Id.* at 346. Dr. Levine further testified that the bullet removed from Officer Jenkins' spinal canal was a 9 mm caliber and could have been fired from the gun found near Appellant. *Id.* at 350.

Appellant testified in his own defense to the following: he acknowledged that he had a gun and ran from Officers Jenkins and Auge. N.T. Trial, 8/12/14, at 427. However, he denied driving through a stop sign and striking either officer. *Id.* at 429, 442, 444. Appellant testified that as he ran into the wooded area, he intended to discard his gun but stumbled, at which point he was shot in the chest. *Id.* at 431-434, 454-455. Appellant tried to run again, but collapsed and "passed out." *Id.* at 436-437. When he woke up, he was being "kicked in [his] back" by an officer and Appellant passed out again. *Id.* at 438. When Appellant next awoke, he was in the hospital. *Id.* at 438. Appellant denied pointing his gun at anyone and repeatedly denied shooting his gun at all. *Id.* at 437, 440, 460-461, 467-468, 473-474, 476, 478. Instead, Appellant stated on cross-examination, Officer Jenkins wanted to shoot and kill him during the traffic stop but did not want to be recorded doing so on the dash cam; Officer Jenkins thus waited until they were in the woods before shooting him; it was Officer Auge who accidentally shot Officer Jenkins; and the bullet removed from Officer Jenkins during surgery was switched with

another bullet. *Id.* at 449-451, 489.

The jury found Appellant guilty of all charges. Additionally, the trial court found Appellant guilty of persons not to possess firearms. N.T. Trial, 8/12/14, at 539. Appellant waived a presentence investigation report, and the case proceeded immediately to sentencing, on August 18, 2014. The trial court sentenced Appellant, who was then 25 years old, to an aggregate term of 30 years and 9 months to 61½ years' imprisonment, which included multiple consecutive sentences.[6]

Appellant filed an untimely post-sentence motion on October 31, 2014,[7] and a *pro se* petition under the Post Conviction Relief Act[8] (PCRA) on June 22, 2015. The trial court denied the PCRA petition, but upon remand following an appeal to this Court, the trial court appointed current counsel and reinstated Appellant's post-sentence and direct appeal rights *nunc pro tunc*. ***Commonwealth v. Hill***, 184 WDA 2016 (Pa. Super. June 14, 2017) (unpublished memorandum).

Appellant filed a timely post-sentence motion on October 20, 2017, which the trial court denied on January 19, 2018. Appellant filed a timely

---

[6] Appellant also pled guilty to escape under a different trial docket, 2013-05910, for which the court sentenced him to 21 to 42 months' imprisonment, to run concurrently with the sentences in this case.

[7] ***See*** Pa.R.Crim.P. 720(A)(1) (written post-sentence motion shall be filed no later than 10 days after imposition of sentence).

[8] 42 Pa.C.S.A. §§ 9541-9546.

notice of appeal and both he and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. On appeal, Appellant presents seven issues for our review:

I. Did the Trial Court err or abuse its discretion when, over objection, it allowed Appellant's prior sentences of three to six years on unrelated crimes to be admitted into evidence at trial, said evidence being unduly prejudicial and not relevant to the charges in the instant matter?

II. Did the Trial Court err or abuse its discretion when it denied a motion to suppress Appellant's statement taken while Appellant was at the hospital recovering from surgery, was on pain medication, and where Appellant was unable to make a knowing, intelligent and voluntary waiver of his Miranda rights due to being in pain and under the influence of narcotics?

III. Did the Trial Court err or abuse its discretion when it, over objection, allowed cross examination of the Appellant when Appellant was asked if he believed Officer Morgan Jenkins had lied to the jury, testimony that was beyond the witness's capacity and was a question for the jury?

IV. Did the Commonwealth present sufficient evidence to prove beyond a reasonable doubt the charge of Criminal Attempt-Criminal Homicide and specifically that the Appellant had the specific intent to kill Officer Jenkins?

V. Did the Trial Court err in imposing sentences for both the conviction for the charge of assault on a law enforcement officer and on the conviction for aggravated assault when these convictions should have merged for sentencing?

VI. Did the trial court err or abuse its discretion in imposing a manifestly excessive and unreasonable sentence in the aggregate of thirty years and nine months to sixty-one and one-half years?

VII. Did the Trial Court err or abuse its discretion when denying Appellant's motion to modify or reduce sentence and failing to adequately consider the sentencing code set forth at 42 Pa.C.S.A. § 9721, *et seq.*, in fashioning a harsh sentence of consecutive periods of incarceration for a period in the aggregate of thirty

years nine months to sixty-one and one-half years?

Appellant's Brief at 7-8.

Appellant first asserts that the trial court erred in admitting evidence of his prior 3 to 6-year sentence.[9] He acknowledges the Commonwealth's intent to establish motive with evidence of his escape from the halfway house, but maintains that the length of his prior sentence was not relevant to motive. Appellant contends that this evidence only caused the jury to speculate on the seriousness of his prior crime and to "make assumptions [as to] his bad character." Appellant's Brief at 20. We disagree.

This Court reviews the admission of evidence for an abuse of discretion. **Commonwealth v. Cox**, 115 A.3d 333, 336 (Pa. Super. 2015) (*en banc*). "An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." **Id.**

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1); **see also Cox**,

_____

[9] Appellant also avers that the trial court erred in admitting evidence of his arrest warrant for escape. Appellant's Brief at 19. However, Appellant did not raise this claim before the trial court — nor does he claim on appeal that he did. **See** Pa.R.A.P. 2117(c) (statement of the case shall specify state of the proceedings where question sought to be reviewed was raised). Accordingly, this claim is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

115 A.3d at 337 ("Evidence of a defendant's prior criminal activity is inadmissible to demonstrate his bad character or criminal propensity."). However, such "evidence may be admissible for another purpose, such as proving motive[.] In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). To show motive, "there must be a specific 'logical connection' between the other act and the crime at issue which establishes that the [instant crime] grew out of or was in any way caused by the prior set of facts and circumstances." *Cox*, 115 A.3d at 337. "[T]he purpose of this rule is . . . to preclude the inference that because [the defendant] has committed other crimes[,] he was more likely to commit that crime for which he is being tried." *Id.*

As stated above, the trial court allowed evidence of Appellant's prior 3 to 6 year sentence to show motive, where Appellant "was the subject of an active arrest warrant in connection with his escape from custody while serving [that] sentence." Trial Court Opinion, 5/17/19, at 6. At trial, Richelle Griffith, a supervisor at the halfway house, testified that an inmate may be "pre-released" to the halfway house, meaning he is transferred from prison before completing his minimum sentence. N.T. Trial, 8/12/14, at 254-255. Upon reaching his minimum sentence, a halfway house "resident" may be eligible for review by the parole board. *Id.* at 256. Appellant was "pre-released" to the halfway house in November 2011, and his minimum term of 3 years should

have been completed in May 2012. *Id.* at 255-256. Appellant, however, left the facility without permission on April 5, 2012, and an arrest warrant was issued for him that same day. *Id.* at 258, 260.

Supervisor Griffith's testimony about Appellant's minimum sentence established the context of his release from state prison to the halfway house, and showed why Appellant leaving the facility was unlawful. As the trial court noted, the evidence showed that Appellant "was allowed to serve a portion of [his] sentence in alternative housing" but he escaped and was thus the subject of an arrest warrant. N.T. Trial, 8/12/14, at 10. This evidence was relevant and had a logical connection to the Commonwealth's theory as to why, on April 11, 2013 — almost exactly one year later — Appellant fought and fled when the officers initiated the traffic stop in this case. *See* Pa.R.E. 404(b)(2); *Cox*, 115 A.3d at 337. Accordingly, the court did not abuse its discretion in permitting this evidence. *See id.* at 336.

Next, Appellant alleges that the trial court erred in denying his motion to suppress the statement he made to police. He cites his suppression hearing testimony that he woke "up to detectives in his room and feeling as though he were on pain medication," and that he could not remember whether he was advised of his *Miranda* rights. Appellant's Brief at 22. Appellant maintains that he was incapable of knowingly and voluntarily waiving his rights.

As the Commonwealth points out, it did not introduce Appellant's statement into evidence at trial, and nothing in Appellant's brief suggests that

it did. *See* Commonwealth Brief at 17 (explaining that Appellant told police that he had no recollection of events and thus did not inculpate himself). Thus, Appellant's present challenge to the trial court's suppression ruling is moot.

In his third issue, Appellant avers that the trial court erred in allowing the Commonwealth to ask him, on cross-examination, whether Officer Jenkins was lying when he testified that Appellant fired a gun. Appellant maintains that this "testimony . . . was beyond [his] capacity," as Appellant could only testify as to what he saw, and additionally, Officer Jenkins' truthfulness was a question for the jury. Appellant's Brief at 23-24. Appellant concludes that he is entitled to a new trial. We disagree.

We first set forth the challenged cross-examination:

> [Commonwealth:] You heard without any doubt or uncertainty from Officer Morgan Jenkins that you are the person that shot him, that you shot him, you hit him twice, and you shot at him . . . at least four times?
>
> A. I never shot anybody.
>
> Q. I'm saying that you heard him testify?
>
> A. Yes, I heard him testify to that.
>
> **Q. So Officer Morgan Jenkins is lying to this jury?**
>
> **[Appellant's counsel:] Objection to the question. Beyond the witness's capacity. That is a question for the jury.**
>
> [Commonwealth:] I guess I disagree. He said —
>
> [Appellant's counsel:] May we approach?
>
> [Commonwealth:] He is saying one thing.

THE COURT: Proceed.

[Commonwealth:] You would agree that Sergeant [Charles] Henderson[, a responding officer] is also lying when he told this jury that he saw you trying to reach for the gun when you were on the ground?

[Appellant:] Yes.

*See* N.T. Trial, 8/12/14, at 460-461 (emphases added).

The Pennsylvania Supreme Court has stated:

On cross-examination, an attorney is entitled to question the witness about subjects raised during direct examination as well as any facts tending to refute inferences arising from matters raised during direct testimony. Similarly, an attorney may discredit a witness by cross-examining the witness about omissions or acts that are inconsistent with his testimony. However, the scope and limits of cross-examination is [*sic*] vested in the trial court's discretion and that discretion will not be reversed unless the trial court has clearly abused its discretion or made an error of law.

***Commonwealth v. Ogrod***, 839 A.2d 294, 322 (Pa. 2003) (citations omitted).

Appellant's argument ignores that on direct examination, he testified that Officer Jenkins and other officers wrongly accused him of firing his gun at someone. ***See*** N.T. Trial, 8/12/14, at 440. Thus, the Commonwealth's question — as to whether Officer Jenkins, as well as Sergeant Henderson, lied about the events — not only related to Appellant's direct-examination testimony, but corroborated it. ***See Ogrod***, 839 A.2d at 322. Furthermore, Appellant does not claim any prejudice where, again, the elicited testimony was consistent with Appellant's own theory of the case. Accordingly, the trial court did not abuse its discretion in permitting the cross-examination. ***See***

- 12 -

*id.*

In his fourth issue, Appellant challenges the sufficiency of the evidence for his conviction of attempt to commit homicide — specifically, the element of intent. Appellant acknowledges that specific intent to kill may be established by the use of a deadly weapon to injure a vital part of the body. However, he maintains the evidence in this case only showed that he "fired a couple shots in the woods, in the dark while fleeing from the police." Appellant's Brief at 26. Appellant further contends that although Officer Jenkins suffered paralysis, his arm and armpit — where he was shot — were not vital parts of the body. Appellant is not entitled to relief.

In reviewing a challenge to the sufficiency of the evidence, we determine:

> [w]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. [W]e may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. . . . Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fortson*, 165 A.3d 10, 14-15 (Pa. Super. 2017) (citation omitted).

This Court has explained:

"A person commits an attempt when, with the intent to commit a

- 13 -

specific crime, he does any act which constitutes a substantial step towards the commission of that crime."  18 Pa.C.S.[A.] § 901(a).

> "For a defendant to be found guilty of attempted murder, the Commonwealth must establish specific intent to kill."  Therefore, "[i]f a person takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act, he may be convicted of attempted murder."  "The Commonwealth may establish the *mens rea* required for first-degree murder, specific intent to kill, solely from circumstantial evidence."  Further, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill."

*Fortson*, 165 A.3d at 15 (some citations omitted).  Additionally:

> [I]n the trial of a person for attempting to commit murder, "the fact that that person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense."  18 Pa.C.S. § 6104.

*Id.*

We consider Officer Jenkins testimony in the light most favorable to the Commonwealth.  He testified that as he pursued Appellant on foot through the woods, he shined his flashlight on Appellant and observed him carrying a gun. N.T. Trial, 8/12/14, at 89-94.  Appellant fell while Officer Jenkins was approximately 10 feet away and shining his flashlight on Appellant.  *Id.* at 94. Although the officer repeatedly ordered Appellant to drop his gun, Appellant "rotate[d] his shoulder" and pointed his gun directly at Officer Jenkins.  *Id.* at 95.  Officer Jenkins again yelled "drop the gun" and fired his gun twice at Appellant.  *Id.* at 96.  The officer saw the muzzle flash and Appellant returned

fire. *Id.* Officer Jenkins retreated by walking backwards, all while firing his gun, and was shot in the left tricep. *Id.* at 98. Officer Jenkins continued shooting, but was then shot in the left armpit and "dropped to the ground immediately." *Id.* at 99. Additionally, Officer Auge testified that she saw two sets of muzzle flash, indicating two people shooting guns. *Id.* at 170. Officer Auge could determine which actor was Officer Jenkins because of his flashlight, and she heard Officer Jenkins yelling commands. *Id.*

The trial court summarized that the evidence showed that Appellant knowingly and intentionally shot Officer Jenkins. Trial Court Opinion, 5/17/18, at 9. Appellant's claim that he could not see where he was firing ignores both officers' testimony that Officer Jenkins shined a flashlight and that his gunfire caused muzzle flashes. Appellant's contention that he did not shoot at vital parts of the officer's body is also meritless, as the jury was free to find that the officer's tricep and armpit were close to his torso and vital organs. *See Fortson*, 165 A.3d at 15. Finally, it was undisputed that Appellant did not have a license to carry the firearm, and thus, pursuant to 18 Pa.C.S.A. § 6104, his firing of the gun at Officer Jenkins was evidence of Appellant's intent to commit homicide. *See id.* The jury was free to believe all, part, or none of the testimony and weigh the credibility of witnesses. *See id.* In light of the foregoing, Appellant's sufficiency challenge is meritless.

Appellant's fifth claim on appeal is that the trial court erred in not merging his sentences for assault of a law enforcement officer, 18 Pa.C.S.A.

§ 2702.1(a),[10] and aggravated assault/police, 18 Pa.C.S.A. § 2702(a)(3).[11]
He reasons that all of the elements of the latter are included in the former.
No relief is due.

"A claim that crimes should have merged for sentencing purposes raises
a challenge to the legality of the sentence. Therefore, our standard of review
is *de novo* and our scope of review is plenary." **Commonwealth v. Nero**, 58
A.3d 802, 806 (Pa. Super. 2012) (citation omitted). Our Sentencing Code
provides:

> No crimes shall merge for sentencing purposes unless **the crimes
> arise from a single criminal act** and all of the statutory
> elements of one offense are included in the statutory elements of
> the other offense. Where crimes merge for sentencing purposes,
> the court may sentence the defendant only on the higher graded
> offense.

42 Pa.C.S.A § 9701 (emphasis added).

_____

[10] A person commits assault of a law enforcement officer if he "attempts to
cause or intentionally or knowingly causes bodily injury to a law enforcement
officer, while in the performance of duty and with knowledge that the victim
is a law enforcement officer, by discharging a firearm." 18 Pa.C.S.A. §
2702.1(a). The court imposed a sentence of 240 to 480 months'
imprisonment on this count, to be served concurrently with Appellant's 240 to
480 month sentence for attempted homicide.

[11] "A person is guilty of aggravated assault if he . . . attempts to cause or
intentionally or knowingly causes bodily injury to any of the officers, agents,
employees or other persons enumerated in subsection (c), in the performance
of duty[.]" 18 Pa.C.S.A. § 2702(a)(3). The court imposed a sentence of 27
to 54 months' imprisonment on this count, to be served consecutive to
Appellant's attempted homicide sentence. We further note that the court did
not impose any sentence on Appellant's conviction of aggravated assault-
serious bodily injury, finding that it merged with this sentence.

The trial court and the Commonwealth aptly point out that the convictions at issue pertained to two different victims. Trial Court Opinion, 5/17/18, at 12; Commonwealth Brief at 30. Appellant was convicted of assault of a law enforcement officer for shooting Officer Jenkins, but his aggravated assault/police conviction was based on his striking Officer Auge. Thus, contrary to Appellant's claim, these convictions did not arise from a single criminal act, but rather separate acts committed in different places (Appellant's car and the hillside) against different people. *See* 42 Pa.C.S.A § 9701. The trial court thus did not err in not merging these sentences. *See also Commonwealth v. Yates*, 562 A.2d 908, 911 (Pa. Super. 1989) ("[I]t remains the law of this Commonwealth that the life and safety of each citizen is to be protected **individually**. There is no 'two for one discount' in the Pennsylvania Crimes Code, and we will not permit criminals to imply one through distortion of the common law merger doctrine.").

Appellant's last two issues both challenge as excessive Appellant's aggregate sentence of 30 years and 9 months to 61½ years' imprisonment. We note that the trial court imposed the following sentences to run consecutively: (1) 240 to 480 months for attempt to commit homicide; (2) 27 to 54 months for aggravated assault/police; (3) 42 to 84 months for carrying a firearm without a license; and (4) 60 to 120 months for persons not to possess firearms.

Appellant alleges that the imposition of consecutive sentences was

unduly harsh and essentially created a "life or near-life sentence." Appellant's Brief at 30-31. While Appellant acknowledges that at sentencing the trial court stated that it considered his rehabilitative needs, the protection of the public, and the gravity of the offense, he contends that "the only specific reasons" cited on the record were his prior criminal history and the impact on the victims. *Id.* at 30-31, 33. However, Appellant maintains, his prior offenses were already calculated into his prior record score. Appellant further claims the court did not consider the nature and circumstances of the crime — namely, that he "was acting in the heat of the moment[ while] being fired upon by officers" — and that there was no mention of any mitigating factors. *Id.* at 34. No relief is due.

This Court has explained:

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

. . . (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists "only when the appellant advances a colorable

argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."

As to what constitutes a substantial question, this Court does not accept bald assertions of sentencing errors. An appellant must articulate the reasons the sentencing court's actions violated the sentencing code.

* * *

An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question.

"When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." . . .

. . . . The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Commonwealth v. Moury*, 992 A.2d 162, 170-171 (Pa. Super. 2010) (some citations omitted).

Following remand by this Court in his prior appeal, Appellant filed a timely post-sentence motion and notice of appeal. *See* Pa.R.A.P. 903(a); Pa.R.Crim.P. 720(a); *Moury*, 992 A.2d at 170. Additionally, Appellant has included a Rule 2119(f) statement in his brief. *See* Pa.R.A.P. 2119(f); *Moury*, 992 A.2d at 170. We thus consider whether Appellant has raised a substantial question.

To the extent that Appellant contends the trial court failed to consider,

as a mitigating factor, that he "was acting in the heat of the moment [while] being fired upon by officers," such a claim does not raise a substantial question. *See Moury*, 992 A.2d at 171. We note that Appellant does not identify any specific, alleged mitigating factor. Additionally, although a claim that the imposition of consecutive sentences for **non-violent** property crimes may constitute a substantial question, no such argument may be raised here. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1271 (Pa. Super. 2013); *Moury*, 992 A.2d at 171-72.

Appellant's convictions arose from his assaults of Officers Auge and Jenkins, pointing a gun at Officer Jenkins despite the officer's repeated commands to drop his weapon and lay down, and his numerous shots fired at Officer Jenkins which caused permanent injury and paralysis. Finally, even if Appellant raised substantial questions, the trial court properly stated its reasons for imposing a lengthy sentence: Appellant's escalating propensity to threaten people with firearms and his failure to be amenable to rehabilitation. *See* N.T., 8/12/14, at 546-547. Accordingly, no relief is due.

In sum, Appellant's claims lack merit. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

- 20 -

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/31/19