J-S61011-19
J-S61012-19
J-S61013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| QUADIR JEFFRIES | : | |
| | : | |
| Appellant | : | No. 143 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003910-2016,
CP-51-CR-0003911-2016, CP-51-CR-0003912-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| QUADIR JEFFRIES | : | |
| | : | |
| Appellant | : | No. 144 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003910-2016,
CP-51-CR-0003911-2016, CP-51-CR-0003912-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| QUADIR JEFFRIES | : | |
| | : | |
| Appellant | : | No. 145 EDA 2019 |

J-S61011-19

Appeal from the Judgment of Sentence Entered December 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003910-2016,
CP-51-CR-0003911-2016, CP-51-CR-0003912-2016

BEFORE: BOWES, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 11, 2020**

Quadir Jeffries appeals from the consolidated aggregate judgments of

sentence of three consecutive life sentences, imposed after Appellant was

convicted of three counts of first-degree murder and related charges. After

careful review, we affirm.

On February 13, 2014, Bria Sanford and Brian Williams were in

Williams's minivan driving in Philadelphia, when Keurlin Charles called

Williams more than four times. *See* N.T. Jury Trial, 12/6/18, at 117-31.

Williams answered the last call and drove to Charles's house, at 6325 Martins

Mill Road. *Id*. Upon arrival, an unknown man approached the window of the

minivan, introduced himself as Charles's cousin, and told them that Charles

was "tied up." *Id*. He asked Williams to come inside and Williams did so,

while Sanford stayed in the minivan. *Id*.

While waiting for Williams to return, Sanford observed a second man

approach and peer into the minivan before walking away. *Id*. at 132-45. A

few minutes later, the first man returned and told her that Williams's wanted

her to come inside the house. *Id*. Sanford refused and began calling

_____

* Former Justice specially assigned to the Superior Court.

- 2 -

Williams's phone. *Id*. After a couple of attempts, Williams answered the phone. Sanford heard Williams say, "[h]old up, wait," to someone. *Id*. Sanford hung up the phone, as she saw the two unknown males exit the house and walk away. *Id*. Again, Sanford called Williams's phone. *Id*. at 146-49. Eventually, a man answered and told Sanford that he had just found the phone on the side of the road. *Id*. at 149-61. Sanford decided to enter the house to look for Williams. *Id*. at 161. Upon entry, she discovered Williams's body on the floor and Charles leaning over the couch, struggling to breathe. *Id*. at 149-61. Sanford ran from the area screaming, eventually pausing to call 911. *Id*.

Philadelphia Police Sergeant Donna Grebloski responded to a radio call for a disturbance at 6300 Oxford Avenue in Philadelphia. *See* N.T. Jury Trial, 12/5/18, at 48-55. When she arrived on scene, she encountered a hysterical Sanford, who eventually directed her to Charles' residence on Martin Mills Road. At the residence, Sergeant Grebloski and her partner observed three deceased males inside of the home. *Id*. The deceased males were identified as Charles, Williams, and Vagner Fremont. *Id*. at 65-70. All three had been shot in the head. Charles was found on the first floor leaning over the couch. His hands were tied behind his back and he had suffered one contact wound to the head. *Id*. Williams was lying on the living room floor. *Id*. He had sustained three gunshot wounds, one each to his leg, neck, and head. Finally, Fremont was located in an upstairs bedroom. *Id*. His hands and feet had

been bound and his head had been covered with a pillow. *Id*. He had suffered one contact wound to the head. *Id*.

Phones belonging to Charles and Williams were recovered. *See* N.T. Jury Trial, 12/11/18, at 17-23. The police pursued several leads, including two suspects who turned out to be innocent based on faulty eye witness identifications. N.T. Jury Trial, 12/10/18, at 215-17; N.T. Jury Trial, 12/11/18, at 34, 47, 73. After it was uncovered that Charles made and received multiple calls from Cori Thompson on the day of the murder, focus shifted to Thompson, Appellant's eventual co-defendant.[1] N.T. Jury Trial, 12/11/18, at 17-23.

Three pieces of evidence led the police to identify Appellant as the second actor. First, on February 14, 2014, Williams's bank card, which allegedly had been stolen during the course of the murders, was used twice at a McDonald's restaurant and once at an auto repair shop in South Philadelphia. N.T. Jury Trial, 12/7/18, at 191-97. The next day, the card was used at a gas station in Northeast Philadelphia. *Id*. The day after that, the card was used at another gas station, along with at a Checkers restaurant and a movie theater in Northeast Philadelphia. *Id*. Finally, on February 17, 2014, the bank card was used to deposit money into the prison accounts of four inmates in the Philadelphia Prison System: Curtis Ford, Kenneth Manning,

---

[1] Cori Thompson pled guilty to his role in the murders and had already begun serving his life sentence before the start of Appellant's trial.

Quisear Russel, and Deandre Brown. *Id*. at 85-82. Surveillance video of the movie theater depicted a male that detectives identified as Appellant. *Id*. at 191-97.

Detective Derrick Venson interviewed Appellant about his usage of Williams's bank card. N.T. Jury Trial, 12/10/18, at 24-34. Although Appellant initially denied any knowledge of the card, once confronted with still images from the movie theater's surveillance system, Appellant conceded that he used Williams's bank card. *Id*. However, Appellant denied any knowledge of the murders, explaining that he had received the bank card from Maurice Pompey. *Id*. Appellant provided the officer with two telephone numbers, (267) 275-9187 and (267) 973-7480. *Id*. at 18. As the interviewer exited the room, Appellant called him back in, to tell him "you think you know, but you really don't."[2] *Id*. at 24-34.

Second, on the day of the murders, five calls originating in the vicinity of the crime scene were made from the phone of Appellant's mother[3] between

---

[2] Police interviewed Maurice Pompey, who denied giving Appellant Williams's bank card. *See* N.T. Jury Trial, 12/12/18, at 67-72.

[3] All of the inmates to whom Appellant gave money were identified as friends of Appellant. Reviewing their prison call logs allowed officers to confirm that (267) 973-7480, was indeed Appellant's phone number. N.T. Jury Trial, 12/7/18, at 118-37, 147-70; N.T. Jury Trial, 12/11/18, at 116; N.T. Jury Trial, 12/12/18, at 201-09. Officers also uncovered conversations among inmates and Appellant and his mother that led them to conclude that on the day of the murder Appellant switched phones with his mother. N.T. Jury Trial, 12/7/18, at 147-70; N.T. Jury Trial, 12/12/18, at 201-09.

1:22 p.m. and 2:01 p.m. N.T. Jury Trial, 12/13/18, at 70, 78. The phone associated with Thompson also made fifteen network connections between 1:15 p.m. and 2:54 p.m. in the vicinity of the crime scene. *Id*.

Finally, the ballistic evidence collected from the crime scene connected Appellant to the crime. All five of the cartridge casings recovered from the crime scene were 9-millimeter caliber and had a manufacturer stamp of "PMC." N.T. Jury Trial, 12/6/18, at 21-23. The ammunition matched a photograph of ammunition taken on Appellant's phone on January 28, 2014, approximately two weeks before the murders. N.T. Jury Trial 12/13/18, at 33, 37. Further, the defense stipulated that three of the fired cartridge casings matched a firearm used by Appellant in a different shooting that occurred less than one month prior to the murders of Charles, Williams, and Fremont.[4] N.T. Jury Trial, 12/11/18, at 168-69.

Appellant was arrested and charged with the murders of Charles, Williams, and Fremont, as well as with burglary, robbery, conspiracy to commit murder, and several firearm offenses at three docket numbers. Each docket number related to a different victim. Both sides litigated omnibus

_____

[4] After the murders, Appellant was arrested and convicted of a home invasion and shooting that occurred on January 18, 2014. Appellant was captured on video leaving the scene of that crime and shooting out a video camera. The fired cartridge casing left behind from Appellant's shot at the video camera matched the three cartridge casings left at this crime scene. Pursuant to a motion *in limine*, the court allowed the Commonwealth to admit the earlier conviction for the same firearm. The jury did not hear the underlying facts behind the conviction. *See* Order, 12/3/18.

pretrial motions. The Commonwealth sought to introduce Pa.R.E. 404(b) evidence of the prior shooting. Appellant tried to suppress all evidence seized from his residence, including the call detail records for all of the phones the Commonwealth attributed to Appellant, and all statements or comments that he made to the police. After several hearings, the court granted the Commonwealth's Pa.R.E. 404(b) motion and denied Appellant's motion to suppress.

Appellant proceeded to a jury trial, and on December 18, 2018, the jury found Appellant guilty of three counts of first-degree murder, two counts of conspiracy to commit robbery, conspiracy to commit burglary, two violations of the Uniform Firearms Act, and possession of an instrument of crime. On the same day, the court sentenced Appellant to three consecutive sentences of life imprisonment without the possibility of parole. Appellant did not file post-sentence motions, but did file a timely appeal.[5] Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant raises the following issue for our review:

> Did the trial court err and/or abuse its discretion when it granted the Commonwealth's request to present evidence of a photograph of ammunition recovered during a search of a mobile phone where:

---

[5] On July 9, 2020, this Court held that the inclusion of more than one docket number on a notice of appeal does not violate **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). **See Commonwealth v. Johnson**, ___ A.3d ___, 2020 PA Super 164 (Pa.Super. July 9, 2020) (*en banc*). Accordingly, we proceed to address the merits of these appeals.

The photograph was not properly authenticated as no evidence was presented regarding who took the photograph or who was depicted in it;

The evidence at trial established that [Appellant] was not in possession of the relevant phone on multiple occasions;

The phone was registered to another person;

The phone was used by other people;

The person visible in the photograph of the ammunition is not [Appellant];

The photograph was unduly prejudicial as the ammunition was of the same caliber, type, and brand as the ammunition used in the crimes charged; and,

Admission of this photograph was unduly prejudicial to the defendant and this prejudice outweighed–substantially– any probative value of that evidence?

Appellant's brief at 4-5 (footnote omitted).[6]

We consider Appellant's challenge to the admission of the photograph mindful of our standard of review:

The admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion. As abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice manifest unreasonableness, or misapplication of law.

*Commonwealth v. Cox*, 115 A.3d 333, 336 (Pa.Super. 2015) (internal citations and quotation marks omitted). Additionally, we note that we may

---

[6] Since Appellant has submitted three briefs that are substantively identical, we refer to them collectively as "Appellant's brief."

affirm the trial court's ruling on any basis supported by the record. ***Commonwealth v. Johnson***, 160 A.3d 127, 144 (Pa. 2017).

First, Appellant argues that the Commonwealth did not properly authenticate the photograph because they could not prove that the phone, wherein the photograph resided, was "continuously in the possession" of Appellant. Appellant's brief at 50. Authentication is a prerequisite that all evidence must satisfy before admission is allowed. ***See Commonwealth v. Talley***, ___ A.3d ___, 2020 Pa.Super. 171 (Pa.Super. July 17, 2020).

> Pursuant to Pennsylvania Rule of Evidence 901, authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. ***See*** Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. ***See*** Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). ***See*** Pa.R.E. 901(b)(4).

***Commonwealth v. Mangel***, 181 A.3d 1154, 1160 (Pa. Super. 2018). Accordingly, "[a]uthentication generally entails a relatively low burden of proof." ***Commonwealth v. Murray***, 174 A.3d 1147, 1156–57 (Pa.Super. 2017)

Appellant contends that the Commonwealth failed to adequately authenticate the phone and the photograph because trial testimony established: that the phone was registered to his deceased brother, that Appellant's mother answered a call on it the day of the murders, and that police seized it from his little brother when executing the search warrant of

- 9 -

his residence. *See* Appellant's brief at 49-50. However, the trial court disagreed, finding that the Commonwealth provided sufficient evidence connecting Appellant to the photograph. *See* Trial Court Opinion, 3/25/19, at 14. In doing so, the trial court summarized the evidence that it relied on in reaching its conclusion as follows:

> Here, the Commonwealth purported that the photograph in question was a photograph of the type of ammunition used in the murders of the decedents found on [Appellant's] phone. The photograph speaks for itself as to its contents. As to whether or not it was [Appellant's] phone, the Commonwealth presented evidence that the phone was registered to Rameek Roland, [Appellant's] brother who died eight years prior to the murders. Additionally, [Appellant] provided the phone number for the phone in question to homicide detectives as biographical information. Quisear Russell, [Appellant's] "god brother," testified that the phone belonged to [Appellant]. Susan Blatch, [Appellant's] mother, stated in a recorded phone call taken the day of the murders that the phone belonged to [Appellant]. Lastly, the Commonwealth presented circumstantial evidence that Curtis Ford, [Appellant's] "cellie," knew the phone to be [Appellant's].

*Id*. We agree.

The record supports the conclusion that the Commonwealth sufficiently authenticated the phone and photograph with ample circumstantial evidence. Further, Appellant has provided scant analysis and has not cited any legal authority in support of his argument. Accordingly, we find that the trial court did not abuse its discretion when it determined that the phone and photograph were properly authenticated.

Next, Appellant argues that the photograph should not have been admitted because it was irrelevant and unduly prejudicial. *See* Appellant's

brief at 48-49. Specifically, Appellant claims that his possession of the murder weapon prior to the murder "in no way advances the claim" that he committed the murders. *Id*. at 49. Also, the evidence was unduly prejudicial because the ammunition was of the same type and brand as the ammunition used in the crimes charged. *Id*.

Preliminarily, we observe that relevant evidence is admissible if it "tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference regarding a material fact." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (citing *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002)). The trial court found that the evidence was relevant, since it made it more probable that Appellant possessed the gun used in the shooting. *See* Trial Court Opinion, 3/25/19, at 12. We agree. The fact that a photograph depicting the same type of ammunition used in the murders was stored on Appellant's phone, less than a month prior to the murders, makes it more likely that Appellant still possessed the murder weapon on the date of the crime. Thus, the record supports the trial court's conclusion that the photograph was relevant.

Appellant also attacks the admission of the photograph as improperly prejudicial. He contends that it unfairly connected him to the crime, since the fact that he possessed the ammunition a month before the crime does not mean that he committed the crime. *See* Appellant's brief at 51.

The trial court admitted the evidence under Pa.R.E. 404(b)[7] to prove

identity.  The court explained:

> Here, the central issue in this case was the identity of the murderers.  The evidence presented by the Commonwealth showed that [Appellant] had possessed the murder weapon less than one month prior the murder in the present case.  Additionally, sixteen days prior the murder, [Appellant's] phone was used to take a picture of ammunition identical to the ammunition used in the murder.  The picture was relevant to establish a timeline to circumstantially prove continuous possession by [Appellant] of the murder weapon from the time of the prior home invasion up to the murders.  The picture of the ammunition on [Appellant's] phone, when evaluated in conjunction with [Appellant's] earlier possession of the murder weapon, logically tended to establish the identity of one of the murderers as [Appellant].
>
>     . . . .
>
> Here, [Appellant's] claims of prejudice cite the exact same reasons why the photograph is relevant in the first place.  It is because that ammunition is of the same caliber, type, and brand

_____

[7] Under Pa.R.E. 404(b):

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
>
> (2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
> (3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b).  Notably, if evidence is being offered under one of the exceptions, it is only admissible if the probative value outweighs the danger of unfair prejudice to the defendant. Pa.R.E. 404(b)(3).

that it logically tends to establish the identity of one of the murderers as [Appellant]. This evidence is harmful to [Appellant], but it does not inflame the jury. Moreover, even if one could argue that it was more prejudicial than probative, the admission of the photo would be harmless error since it was already stipulated by the parties that [Appellant] was in possession of the murder weapon itself less than one month prior to the instant murders. Therefore, the evidence of the photograph was properly admitted; and this claim warrants no relief.

Trial Court Opinion, 3/3/25/19, at 12-13. We discern no abuse of discretion in the trial court's well-reasoned analysis. *See*, *e.g.*, *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa.Super. 2009) (explaining that evidence is not prohibitively prejudicial simply because it is harmful to a defendant).

Further, Appellant's scant analysis does not persuade us that the trial court erred. Appellant's sole case law citation is irrelevant to the identity exception analysis, since it focuses on the "common scheme" Pa.R.E. 404(b) exception to admissibility. *See* Appellant's brief at 47,-48. Further, a review of the record reveals that the Commonwealth limited its usage of the evidence to permissible grounds. Accordingly, we discern no basis to disturb the trial court's overruling of Appellant's objection to the admission of the photograph on this basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2020