J-E04004-14

2015 PA Super 103

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MYRON COX, | |
| Appellant | No. 1831 WDA 2012 |

Appeal from the Judgment of Sentence October 1, 2012
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0016050-2011

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA, DONOHUE, SHOGAN, MUNDY, OLSON, and OTT, JJ.

DISSENTING OPINION BY SHOGAN, J.:               **FILED APRIL 29, 2015**

It is well settled that "[t]he admission of evidence is within the sound discretion of the trial court, and will be reversed on appeal only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Miles***, 846 A.2d 132, 136 (Pa. Super. 2004) (*en banc*) (citing ***Commonwealth v. Lilliock***, 740 A.2d 237 (Pa. Super. 1999)). Abuse of discretion requires a finding of misapplication of the law, a failure to apply the law, or judgment by the trial court that exhibits bias, ill-will, prejudice, partiality, or was manifestly unreasonable, as reflected by the record. ***Commonwealth v. Montalvo***, 986 A.2d 84, 94 (Pa. 2009). Because I disagree with my learned colleagues in the Majority that the trial court abused its discretion in admitting into evidence facts surrounding a physical

alteration, in which Appellant participated, that occurred several weeks prior to the shooting that precipitated the instant charges, I respectfully dissent.

A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered. ***Commonwealth v. Freidl***, 834 A.2d 638, 641 (Pa. Super. 2003). The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. ***Id***. A trial court should find evidence admissible if it is relevant, that is "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Williams***, 896 A.2d 523, 539 (Pa. 2006) (quoting ***Commonwealth v. Stallworth***, 781 A.2d 110, 117-118 (Pa. 2001)).

At the time of Appellant's trial,[1] Pennsylvania Rule of Evidence 402 expressly provided that "[a]ll relevant evidence is admissible, except as otherwise provided by law[,]" and "[e]vidence that is not relevant is not admissible." Pa.R.E. 402. Pennsylvania Rule of Evidence 401 defined

---

[1] I note that, subsequent to Appellant's trial, the Pennsylvania Rules of Evidence were rescinded and replaced, effective March 18, 2013. As set forth in the explanatory comments to the new rules, they now "closely follow the format, language, and style of the amended Federal Rules of Evidence. The goal of the Pennsylvania Supreme Court's rescission and replacement of the Pennsylvania Rules of Evidence was . . . to make its rules more easily understood and to make the format and terminology more consistent, but to leave the substantive content unchanged." Explanatory Comments preceding the Pennsylvania Rules of Evidence, at ¶ 2.

"Relevance" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401.

Likewise, Pennsylvania Rule of Evidence 403 set forth that relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice[.]" Pa.R.E. 403. The comment to Pa.R.E. 403 defined "unfair prejudice" as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. Furthermore, our Supreme Court has noted previously that "[e]vidence will not be prohibited merely because it is harmful to the defendant." *Commonwealth v. Dillon*, 925 A.2d 131, 138–139 (Pa. 2007). "[E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citing *Commonwealth v. Owens*, 929 A.2d 1187, 1191 (Pa. Super. 2007)).

As a general rule, a defendant's prior bad acts, including convictions, are not admissible to prove criminal propensity or bad character. *Commonwealth v. Paddy*, 800 A.2d 294, 307 (Pa. 2002). Rule 404 stated, in pertinent part, as follows:

**(b)  Other crimes, wrongs, or acts.**

(1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

(2) Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

(3) Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.

Pa.R.E. 404(b). "This rule deals exclusively with the evidence of crimes, wrongs or acts which a party seeks to admit to prove something about an accused, a complainant or a witness." *Commonwealth v. Thompson*, 779 A.2d 1195, 1201 (Pa. Super. 2001). Such evidence may be admissible "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Russell*, 938 A.2d 1082, 1092 (Pa. Super. 2007).

Essentially, Rule 404(b) seeks to prevent misuse of other acts evidence, "specifically, that jurors might convict a defendant because they perceive the defendant has a bad character or propensity to commit crimes." *Commonwealth v. Cascardo*, 981 A.2d 245, 251 (Pa. Super. 2009) (quoting *Commonwealth v. Hacker*, 959 A.2d 380, 392 (Pa. Super. 2008)). Nevertheless, when prior bad acts evidence is offered for some other legitimate purpose, for example, where the evidence is relevant and part of the chain or sequence of events that contributed to the natural

development of the facts - it may be admissible. *Id*. at 250. "[T]o determine if evidence of other offenses is admissible under Pa.R.E. 404(b), we must first assess whether the evidence of the other offenses is relevant to a permissible purpose and second assess whether its probative value outweighs its potential for prejudice." *Hacker*, 959 A.2d at 392.

In addressing the admission of evidence of Appellant's involvement in an altercation, the trial court offered the following analysis:

> [E]vidence of the recent dispute tends to establish Appellant's motive for the assault on [Mr.] Clardy.
>
> * * *
>
> [T]he Commonwealth was not attempting to show through evidence of the prior dispute over the card game debt that Appellant has a propensity toward criminal conduct. Rather, [Appellant's] prior fight shows a motive for his additional criminal conduct, in that the dispute between Appellant's group of friend[s] and [Ms.] Cochran's [group of friends] had not resolved and was violent in nature.[2] As such, it is highly probative and this Court did not err in determining that its probative value outweighs the resulting prejudice to Appellant.
>
> _____
> [2] Although only the motive exception was argued and was sufficient as an exception, the evidence would also be admissible to show the history and natural development of the events and offenses for which Appellant was charged.

Trial Court Opinion, 3/27/13, 7 (citations omitted). Upon review of the certified record, I am constrained to agree with the trial court.

My review reflects that both Mr. Taza Clardy, the victim of the crime herein, and Ms. Ashley Cochran testified regarding their familiarity with each other and with Appellant. Specifically, both witnesses testified that

- 5 -

Ms. Cochran was dating the son of Mr. Clardy's girlfriend. N.T., 4/11-13/12, at 51, 115-116. In addition, Ms. Cochran testified that she and Mr. Clardy were on friendly terms. *Id*. at 118. Also, both witnesses testified that Mr. Clardy had been to Ms. Cochran's home on occasions prior to the incident in question. *Id*. at 51-52, 118-119. Mr. Clardy testified that he would "hang out" with Ms. Cochran about two or three times per week and that he is still friends with Ms. Cochran. *Id*. at 85-86. Ms. Cochran testified that Appellant and his brother lived with their mother in a house across the street from Ms. Cochran's home for a long period of time. *Id*. at 124-125. Ironically, Mr. Clardy offered testimony that he had been with Appellant at Ms. Cochran's home on occasions prior to the incident in question. *Id*. at 54-55. Mr. Clardy stated that, while he and Appellant may not have engaged in extended conversations, Mr. Clardy had shaken hands with Appellant at Ms. Cochran's home when they had both been present. *Id*. at 55.

The record further reflects that, several weeks prior to the incident in question, a group of Ms. Cochran's friends got into a dispute with a group of individuals, including Appellant, with regard to a game of cards. *Id*. at 116. Ms. Cochran explained that, the week after the card game, a physical fight occurred in front of her home between Ms. Cochran's friends and Appellant and his friends in relation to money owed from the card game. *Id*. at 116-118. During the altercation, Appellant struck one of Ms. Cochran's friends

from behind. *Id*. at 118. Ms. Cochran testified that after the fight everyone involved was still angry. *Id*. Incidentally, the shooting of Mr. Clardy, which resulted in the crimes herein, occurred on the street in front of Ms. Cochran's home. Although Mr. Clardy was not at the card game or the fight, there exists testimony in the record reflecting that Appellant did see Mr. Clardy with Ms. Cochran's group of friends. *Id*. at 134-135.

In my estimation, these facts support the trial court's conclusion that evidence of the altercation on the street prior to the incident in question helped establish Appellant's motive for shooting a firearm at Mr. Clardy, as one of Ms. Cochran's friends. In addition, this evidence establishes a complete history of the events leading up to the shooting of Mr. Clardy. Moreover, in my assessment, the potential for prejudice from admission of this evidence does not outweigh its probative value. Accordingly, I do not believe that the trial court abused its discretion in allowing the admission of the evidence regarding the prior fight on the street. Hence, I respectfully dissent.

P.J. Gantman, Judge Mundy, and Judge Olson join this dissenting opinion.