J-S01038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JON RAYMOND WATKINS | : | |
| | : | |
| Appellant | : | No. 913 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 19, 2022
In the Court of Common Pleas of Bradford County Criminal Division at
No(s):  CP-08-CR-0000309-2022

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: AUGUST 20, 2024**

Appellant, Jon Raymond Watkins, appeals from the judgment of sentence entered by the Court of Common Pleas of Bradford County following jury convictions for terroristic threats and simple assault by physical menace.[1] He argues that evidence admitted at trial should have been excluded and that the jury's verdict was contrary to the weight of the evidence. We affirm.

Appellant was arrested on May 6, 2022, after multiple police officers responded to a 911 call about him pointing a firearm at another person inside a house in Sayre Borough in Bradford County. He was charged with the above-referenced crimes and also aggravated assault and resisting arrest.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2706(a)(1) and 2701(a)(3), respectively.

Immediately prior to trial, the Commonwealth made an oral motion in limine to permit its main witness, Appellant's stepfather, to testify that immediately after the initial confrontation where Appellant pointed a gun at the stepfather, Appellant said to the stepfather, "you're the reason for this," which referred to the stepfather having previously called police to arrest Appellant. The defense objected on the grounds that the stepfather's statement about what Appellant had said was not contained in the discovery it had received. In response to the court asking whether the stepfather's claim had been revealed in the discovery, it was discerned that the stepfather had disclosed in his written statement that there had been a subsequent conversation immediately after the initial confrontation occurred in which Appellant mentioned going to jail. Finding that this was sufficient disclosure, the court ruled that the Commonwealth could elicit from the stepfather what Appellant said to him because it was relevant to Appellant's motive and intent for the gunpoint confrontation for which he was on trial. N.T. 12/6/22 – A.M., 2-11.

The stepfather was the first witness to testify. Appellant's mother married the stepfather in 1992. Appellant grew up living with them and had a friendly childhood relationship with his stepfather. As he grew into his teens and adulthood the relationship became more distant. As an adult in the years just prior to the incident, Appellant had difficulty holding onto a job, wrecked several cars and generally had a difficult time with his stepfather. N.T. 12/6/22 – A.M., 31-33.

In May 2022, Appellant lived in the house owned by his mother and stepfather. While they slept in the master bedroom built over the garage, Appellant had his own room on the first floor. Around 2:30 a.m. on May 6, 2022, Appellant returned to the house screaming at the top of his lungs. His stepfather was woken up by the sound. Appellant continued to make loud noises and cursing loudly for 10 to 15 minutes. The stepfather decided that it would be necessary to talk to Appellant to get him to quiet down. He walked down the stairs from the master bedroom into the kitchen. Although he did not speak, his walking down the steps created a loud noise of its own. When he entered the kitchen, he turned on the light. He then turned onto the hallway that led to Appellant's bedroom. N.T. 12/6/22 – A.M., 33-37.

The stepfather could see Appellant sitting on the side of his bed pointing a rifle at him from about eight feet away. Appellant is left-handed. He held the barrel of the rifle with his right hand and the trigger with his left. His head was cocked at an angle to look through the scope on the rifle. Seeing the rifle pointed directly at him, the stepfather jumped backwards and then around a wall into the living room. As the stepfather jumped out of the way of Appellant's aim, Appellant said, "don't fucking think I won't do it!" N.T. 12/6/22 – A.M., 37-39.

The stepfather tried to remain calm and let a second pass before asking, "Jon, what the hell are you doing?" Appellant walked from the hallway into the living room and pointed his finger at his stepfather and said, "you had me

arrested for hitting that refrigerator."[2] After that, the stepfather said that he was "sorry," and started to walk back upstairs. Appellant yelled, "sorry's not gonna cut it!" and then mumbled unintelligibly. N.T. 12/6/22 – A.M., 39, 43-44.

After the confrontation, the stepfather rejoined his wife in their bedroom. They waited to call police in the hope that Appellant would calm down. When he heard glass breaking on the first floor, the stepfather decided not to wait any longer and called. After a while, things became quiet downstairs, so the stepfather and mother quietly left the house and waited on the back porch. At one point, the stepfather saw Appellant outside, so he went back in the house, locked the front door and took the rifle from Appellant's bedroom and put it in the garage. Stepfather called the police to tell them the rifle had been secured. The rifle was operable and fully loaded with five live rounds. N.T. 12/6/22 – A.M., 44-47, 72-78.

When police officers arrived, they set up a perimeter around the house. Appellant was sitting on the front stoop when two officers approached him.

_____

[2] Appellant immediately objected. At a sidebar, the Commonwealth explained that it was consistent with the written statement. The trial court agreed and stated that it was admissible evidence, but it would give a curative instruction if Appellant requested. Appellant's counsel admitted it had interpreted the statement incorrectly to having referred to a future arrest that night and not a prior arrest. The court noted that the stepfather's written statement referred to Appellant having gone to jail because he and his wife believed Appellant had hit their refrigerator, and so clearly referred to a prior arrest. It also ruled that the defense had sufficient notice. Appellant moved for a mistrial, which was denied, and declined any explanatory instruction to the jury. N.T. 12/6/22 – A.M., 39-43.

- 4 -

One had his firearm drawn and the other had his taser at the ready. One officer announced, "police, don't move!" Appellant jumped up. The officer then said, "Jon, you're under arrest!" Appellant turned towards the front door of the house, opened the screen door and tried to open the front door. Unable to, he twice tried to force the door by kicking it. The second officer fired his taser, which caused Appellant to fall to the ground where he was subdued and handcuffed. Officer Thomas Zebrowski secured the rifle in the garage. N.T. 12/6/22 – A.M., 104-111.

The jury found Appellant guilty of terroristic threats and simple assault by physical menace. N.T. 12/6/22 – P.M., 44. It found Appellant not guilty of aggravated assault and resisting arrest. *Id*. On December 19, 2022, the court imposed concurrent terms of incarceration in the standard range of the guidelines of 12 to 36 months on the terroristic threats conviction and 9 to 18 months on the simple assault conviction, to be served consecutively to a sentence Appellant was then serving. Trial Court Opinion, 1; Trial Court Order, 12/27/22, 1-2. The certified record on appeal contains a post sentence motion timely filed by Appellant on December 27, 2022. That motion included a challenge to the weight of the evidence. *See* Appellant's Post Sentence Motion, ¶2. Argument on the motion was continued multiple times and then held on May 23, 2023. Trial Court Opinion, 1. The motion was denied by the court on June 19, 2023. Appellant filed a timely appeal on June 23, 2023.

In his appeal, Appellant raises two claims for review:

1. Did the trial court err[…] in denying the Appellant's Motion for Mistrial after the prosecution introduced evidence of prior bad acts at trial with no notice to the defense, as required by Rule 404(B)?

2. Did the trial court err[…] in denying Appellant's Motion for Judgement of Acquittal on the grounds that the verdict was against the weight of the evidence?

Appellant's Brief, 3-4.

Generally, "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." **Commonwealth v. Crosley**, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias or ill-will, or such lack of support so as to be clearly erroneous." **Crosley**, 180 A.3d at 768; **Commonwealth v. Cook**, 231 A.3d 913, 919 (Pa. Super. 2020) (similar). **See also Commonwealth v. DiStefano**, 265 A.3d 290, 297 (Pa. 2021) (appellant cannot meet heavy burden of establishing abuse of discretion by simply persuading appellate court that it may have reached different conclusion than trial court).

As to the admissibility of evidence at trial:

All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Even if evidence is relevant, the court may nonetheless exclude it if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

***Commonwealth v. Gross***, 241 A.3d 413, 418-19 (Pa. Super. 2020) (citations and quotation marks omitted).

Pursuant to Rule 404 of the Pennsylvania Rules of Evidence, evidence of other crimes, wrongs, or other acts is inadmissible merely to prove a defendant's bad character or criminal propensity. ***See Commonwealth v. Hairston***, 84 A.3d 657, 665 (Pa. 2014).

> [T]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effect[ive]ly to strip him of the presumption of innocence.

***Commonwealth v. Cox***, 115 A.3d 333, 337 (Pa. Super. 2015) (quoting ***Commonwealth v. Spruill***, 391 A.2d 1048, 1049-50 (Pa. 1978)).

The stepfather's testimony that Appellant said, "you had me arrested for hitting that refrigerator" clearly referenced a prior arrest and therefore implicated Rule 404(b). It also was relevant to Appellant's motive for having threatened the stepfather as it was said immediately after Appellant had aimed a loaded rifle at the stepfather while stating he would be willing to shoot him. ***See*** N.T. 12/6/22 – A.M., 39. Therefore, Appellant's admission came within a "permitted use" of Rule 404(b) evidence. Pa.R.E. 404(b)(2) ("[t]his evidence may be admissible for another purpose, such as proving motive …"); ***Commonwealth v. Busanet***, 54 A.3d 35, 60 (Pa. 2012) ("evidence of prior

bad acts may be admissible when offered to prove some other relevant fact, such as motive …").[3]

Appellant made this statement referencing his motive for threatening the stepfather in direct response to the stepfather asking, ""Jon, what the hell are you doing?" N.T. 12/6/22 - A.M., 39. Appellant's response and its timing immediately after the rifle point confrontation sufficiently demonstrated the necessary "specific logical connection" between the prior arrest and the crime at issue, "which establishes that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." ***Commonwealth v. Ross***, 57 A.3d 85, 100 (Pa. Super. 2012) (*en banc*) (internal quotation marks omitted). ***See Commonwealth v. Bidwell***, 195 A.3d 610, 626 (Pa. Super. 2018); ***Commonwealth v. Cox***, 115 A.3d 333, 337 (Pa. Super. 2015).

Appellant argues on appeal that he did not receive the required notice that the Commonwealth would elicit Rule 404(b) evidence at trial, because the prosecutor had stated during the pre-trial motion that he would not seek to introduce specific information about Appellant's prior arrest. Appellant's Brief, 10-11. Appellant's argument reports only part of the pre-trial discussion and does not reflect the trial court's ruling.

---

[3] ***See also*** Pa.R.E. 803(25)(A) (the statement of an opposing party offered against the opposing party and made by the opposing party in an individual capacity is an exception to the rule against hearsay).

Appellant initially objected to any use of the evidence because he had not received written notice of the Rule 404(b) evidence at all, asserting that the stepfather's description of what Appellant had said was not contained in his written statement to the police. N.T. 12/6/22 – A.M., 2-3. As the trial court explained: "[i]n fact, the stepfather's Voluntary Statement said, after he asked [Appellant], 'What the hell was he doing?', that '[Appellant] rambled on about going to jail because my wife and I claimed he hit the refrigerator.'" **Id**., 7. The court therefore ruled there had been adequate notice to the defense.[4]

Appellant now relies on the prosecutor's proffer that he "told the victim to not mention prior arrests." Appellant's Brief, 11; N.T. 12/6/22 – A.M., 9. However, there was more to the Commonwealth's proffer. The prosecutor argued that the stepfather should be able to explain what Appellant said without having to omit the arrest should the defense cross-examine him about the statement. N.T. 12/6/22 – A.M., 9-10. The trial court agreed and summed up its ruling as follows:

---

[4] This ruling was undoubtedly a proper exercise of the court's discretion. **See** Pa.R.E. 404(b)(3) ("In a criminal case the prosecutor must provide reasonable written notice in advance of trial," unless the trial court excuses the need for notice, of the nature and intended use of Rule 404(b) evidence); **Commonwealth v. Lynch**, 57 A.3d 120, 126 (Pa. Super. 2012) (discovery provided to the defense disclosing Rule 404(b) evidence is sufficient notice). There is no requirement that the "notice" be formally given in order for the evidence to be admissible. **Commonwealth v. Mawhinney**, 915 A.2d 107, 110 (Pa. Super. 2006). Appellant no longer contends that production in discovery was inadequate written notice.

"[The stepfather] is permitted to testify as to what happened and what was said. And that's as long as it's somewhat described within, in general terms in his, in the report and it sounds like it is. It's not completely different. And, any differences, [Appellant's counsel,] Mr. Gallagher[,] can cross examine him[.]"

Trial Court Opinion, 4.

In other words, the court ruled that the witness could testify consistently with his written statement without limitation. Therefore, when the stepfather testified at trial, consistently with his statement, it was not an abuse of discretion for the court to overrule Appellant's trial objection and motion for mistrial. As explained by the trial court:

[It] again ruled that the stepfather's written statement disclosed and described that [Appellant] said to him, on the night at issue, that [Appellant] had "gone to jail because [the stepfather and [Appellant's] mother] had claimed he hit [their] refrigerator," and that [Appellant's] stepfather was permitted to repeat in open court what [Appellant] said to him that night. [N.T. 12/6/22 – A.M.,] 41:25 — 41:15.

Trial Court Opinion, 5-6. We discern no abuse of discretion in the trial court's pre-trial and in-trial rulings.

Appellant also argues on appeal that his convictions of terroristic threats and simple assault were contrary to the weight of the evidence because they "stem totally from a severely biased witness," his stepfather. Appellant's Brief, 15. The stepfather's potential "bias" was explored before the jury in the stepfather's testimony about the burden Appellant's lifestyle caused to the stepfather and mother. *See* Appellant's Brief, 14-15; N.T. 12/6/22 – A.M., 32, 55-56. Appellant's counsel also raised this "bias" as a reason to discredit the stepfather's testimony in summation. *See* N.T. 12/6/22 – P.M., 4, 6-7.

"An allegation [raised in a motion for a new trial] that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." ***Widmer***, 744 A.2d at 751. "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" ***Commonwealth v. Talbert***, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa. Super. 2003)). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 880 (Pa. 2008).

"An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013). It "*is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.*" ***Id***. (emphasis included) (quoting ***Widmer***, 744 A.2d at 753). This Court must limit review to "whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." ***Id.*** at 1056.

The trial court explained its reasons for denying Appellant's motion for a new trial, as follows:

> … this was only a "he said" case — the victim's description of his interaction with [Appellant] that gave rise to the terroristic threats and assault charges was the only description presented to the

> jury. Likewise, the testimony of Chief Reynolds and Officer Zebrowski was the only evidence presented as to law enforcement's subsequent interaction with Defendant on the front porch which gave rise to the resisting arrest charges.
>
> While, as explained to the jury, Defendant had "an absolute right ... to remain silent," and the jury "must not draw any inference of guilt or any other inference adverse to the Defendant from the fact he did not testify," **see** [N.T. 12/6/22 – P.M.,] 29:19-24, because he elected not to testify, the case was not of the "he said/she said" variety where the jury is left to weigh and consider conflicting testimony. Instead, the jury had to decide this case based only on the testimony of the victim and two members of law enforcement, all of which was credible. Defendant tries to undermine the victim's credibility by simply claiming the victim, who was his stepfather, was biased. This argument, to the extent Defendant is suggesting his stepfather … fabricated the entire story, is not supported by the evidence. The jury's verdict, which found Defendant guilty of Terroristic Threats and Simple Assault — Physical Menace, and not guilty of Aggravated Assault and Resisting Arrest, was entirely consistent with and supported by the evidence.

Trial Court Opinion, 2-3.

We affirm because the trial court's ruling is reasonable and supported by the evidence, and far from an abuse of discretion. **Commonwealth v. Rice**, 902 A.2d 542, 547 (Pa. Super. 2006) (where trial court's "conclusions are logical and supported by evidence of record" then it "did not commit a palpable abuse of discretion" by rejecting a weight claim).

Appellant asks this Court to substitute his evaluation of the stepfather's credibility for that of both the jury and the trial court by claiming that the evidence supposedly "paints the picture of a man who personally resents the Appellant and would fabricate false allegations with the goal of removing the Appellant from his home via arrest." Appellant's Brief, 15. This we cannot do.

It would be reversible error for this Court to "step[…] into the shoes of the trial judge and revisit[…] the underlying question of whether the verdict was against the weight of the evidence." ***Clay***, 64 A.3d at 1056. Moreover, all the alleged inconsistencies and contradictions were brought to the attention of the jury, which as the fact finder was the final arbiter of credibility and weight. ***See Commonwealth v. Small***, 741 A.2d 666, 673 (Pa. 1999) (where "all of the matters complained of by appellant … were issues argued by appellant's counsel during trial and were properly weighed and rejected by the jury before it reached its verdict" then appellate weight claim fails).

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/20/2024